OPINION OF THE COURT
David B. Saxe, J.
The plaintiff sued Dr. Knapp, an ophthalmologist specializing in strabismus or eye muscle surgery at Columbia Presbyterian Hospital, for malpractice. It was her contention that as a result of the strabismus surgery her eye muscle became overcorrected causing her great discomfort.
The underlying basis for her claim of malpractice was the allegation that Dr. Knapp’s hands were shaking at the time he performed surgery on her. It is noted that the plaintiff did *374 not herself see Dr. Knapp’s hands shake. Her allegation is based upon a handwriting expert who examined entries made by Dr. Knapp on plaintiffs medical chart at or about the time of the surgery and who would testify if given the opportunity, that the entries were written by a person with shaky hands. The plaintiff attempted to qualify the handwriting expert; the defendant requested his exclusion.
It is the generally accepted rule that a handwriting expert is competent to testify as to the authenticity of a writing. But, a handwriting expert is not competent to testify to an individual’s physical or mental condition based on a sample of that individual’s handwriting. (Daniels v Cummins, 66 Misc 2d 575, 580-582 [Westchester County 1971]; see also, State v Anderson, 379 NW2d 70, 79-80 [Minn 1985], cert denied 476 US 1141 [1986]; Carroll v State, 634 SW2d 99, 101-102 [Ark 1982]; Warren v Hartnett, 561 SW2d 860, 863 [Tex App 1978]; People v Hester, 39 Ill 2d 489, 237 NE2d 466, 480 [1968], cert dismissed 397 US 660 [1970].)
Courts across this country have uniformly disapproved of attempts to have a handwriting "expert” testify as to an individual’s mental or physical condition based on a handwriting sample.* For example, in Daniels (supra), the plaintiffs offered the testimony of a handwriting expert in an attempt to prove that, based on a sample of a testator’s handwriting, she was of sound body, but not sound mind, when she signed her will. (Daniels v Cummins, 66 Misc 2d, supra, at 580.)
The Daniels court held that this testimony was incompetent. The court stated that the alleged expert’s opinions were medical and psychiatric findings that were beyond the competence of the alleged expert. The court stated that the putative expert had leaped into an occult and pseudoscientific pursuit known as graphology, venturing far beyond the province of a handwriting expert. (Supra.)
Similarly here, the plaintiff offered the testimony of handwriting expert, not to show the similarity of two or more handwritings, but rather to give a medical opinion as to the soundness of Dr. Knapp’s physical condition. Accordingly, I held that the expert was not competent to render such a medical opinion and I excluded his testimony.
*375 Beyond the objection to the competency of the handwriting expert to testify in this area was the issue of whether handwriting analysis is generally accepted in the scientific community as reliable in demonstrating the fitness or unfitness of a physician.
Under New York law, the results of an allegedly scientific test or procedure will be admitted at trial only if such procedure or results are generally accepted as reliable in the scientific community. (See, e.g., People v Hughes, 59 NY2d 523, 537 [1983], citing Frye v United States, 293 F 1013 [1923].) The proponent of such evidence is required to show the generally accepted reliability of such procedure in the relevant scientific community through judicial opinions, scientific or legal writings, or expert opinion other than that of the proffered expert. (See, People v Middleton, 54 NY2d 42, 49 [1981]; see also, State v Kelly, 97 NJ 178, 210, 478 A2d 364, 380 [1984].) Thus, New York law requires plaintiff here to prove through scientific or legal authority or expert testimony other than through her proffered expert that "handwriting analysis” is generally accepted in the medical or scientific community for the purpose of determining the fitness of surgeons. (See, People v Hughes, supra; People v Middleton, supra.)
Here, the plaintiff, although requested to, was not able to introduce any evidence showing that the results of "handwriting analysis” are generally accepted by the medical or scientific community as reliable for determining the fitness of surgeons.
Moreover, no judicial opinions have been found where a court held that "handwriting analysis” was reliable in determining a surgeon’s fitness to operate. Indeed, on the occasion when a party offered the results of a handwriting analysis in an attempt to prove some fact about the handwriter’s mental or physical condition, that offer was not accepted by the court. (See, Daniels v Cummins, supra.)
I therefore excluded the testimony of plaintiff’s handwriting expert and this decision is filed to formally explain my ruling at trial.

 The cases cited above were the only cases found where a party attempted to have an alleged handwriting expert testify as to a handwriter’s mental or physical condition. In none of these cases was such testimony permitted.