OPINION OF THE COURT
Paul E. Kowtna, J.
This case involves an indictment charging the defendant with sodomy in the first degree, sodomy in the second degree, attempted rape in the first degree, attempted rape in the *11 second degree, endangering the welfare of a child, and sexual abuse in the first degree arising out of an alleged incident between the defendant and a 13-year-old girl who is the defendant’s wife’s niece.
The defense has sought to introduce testimony as part of its case regarding a psychological syndrome called Parental Alienation Syndrome. Since Parental Alienation Syndrome has never been the subject of a Frye hearing in New York State, a Frye hearing was requested by the District Attorney and consented to by the defense. At the hearing the defense called one witness to describe Parental Alienation Syndrome (hereinafter called PAS). This witness called by the defense was Dr. Richard Gardner, a psychiatrist who has been a pioneer in writing about and discussing the syndrome in question.
Since there was a considerable delay between the occurrence of the acts set forth in the indictment and a report being made to the police, PAS is being offered to support the defense position that because of surrounding circumstances and interfamilial discord the victim lied and fabricated this alleged incident of rape with respect to the defendant.
THE FACTS
Dr. Richard Gardner testified at the hearing that he is a physician who graduated from Downstate Medical School in 1956 and who has special training in child psychology. For a period of more than 40 years Dr. Gardner has been a psychiatrist and has served as an unpaid professor at Columbia Medical School in addition to being a visiting lecturer in locations as remote as Denmark and Russia. Dr. Gardner’s practice initially consisted of 95% therapeutic work with a relatively small percentage of forensic work. Over the years that percentage has changed and at present his therapeutic work actively takes approximately 1 to 2% of his time and the remainder of his time and income are accounted for by forensic analysis and testimony.
Dr. Gardner is also a widely published author. He has written approximately 43 books which have been published, and all but one of those which have been printed-since 1978 have been published and marketed through his own corporation, Creative Therapeutics. Creative Therapeutics also markets videotapes and other aids for persons involved in the area of child psychology.
Dr. Gardner has testified in many cases. He first began testifying in military courts during his service with the United *12 States Army in 1960 through 1962. He has testified in civilian courts on matters involving child psychology. Since the early 1980s Dr. Gardner has increasingly testified regarding a syndrome which he has written about called Parental Alienation Syndrome. In his testimony, Dr. Gardner described PAS as follows: “The programming of the child by one parent, into a campaign of denigration directed against the other. And the second component is the child’s own contributions that dovetail and complement the contributions of the programming parent. It’s this combination of both factors that warrants the term parental alienation syndrome.” (Transcript of hearing, at 76.) By Dr. Gardner’s own testimony he has testified in hundreds of cases but only once in Georgia was a criminal case involved. Dr. Gardner was unable to give any of the specifics of the time, place or circumstances in which the testimony was given in Georgia.
PAS was further described by Dr. Gardner as not being confined to conduct initiated between one parent and another. Dr. Gardner testified that other persons in addition to immediate family members may be involved in conduct which involves the syndrome. In addition, the court has been cited to a number of articles including an article entitled The Parental Alienation Syndrome: A Dangerous Aura Of Reliability, which appears in the Loyola of Los Angeles Law Review (27 Loy LA L Rev 1367), and which reviews the current state of literature regarding PAS and concludes that the syndrome has not been accepted by experts in the field. Dr. Gardner admitted on cross-examination to having written the following statements in his books:
(1) “Psychodynamic psychiatry, to an even greater extent, psychoanalysis, is probably the most speculative of all the alleged scientific disciplines. In fact, it is reasonable to say that it is much more an art than a science. We spin off the most fantastic explanations for human behavior and often come to believe our own delusions.” (Transcript of hearing, at 390.)
(2) “Although the concept of scientific proof may be of importance in such fields as chemistry, physics and biology, the concept is not as applicable in the field of psychology; especially with regard to issues being dealt with in such areas as child custody disputes, and sex abuse accusations.” (Transcript of hearing, at 396.)
(3) “The problem is that the courts cannot wait the twenty-five years or more that it would take to conduct such studies, and provide solid verification of refutation in the scientific *13 literature. Neither can people who have been accused of sex abuse wait for these results. Courtrooms need guidelines now, and these protocols, I believe, can help serve this need.” (Transcript of hearing, at 402.)
THE LAW
The admissibility and bounds of expert testimony are addressed primarily to the sound discretion of the trial court. (People v Cronin, 60 NY2d 430 [1983]; People v Mooney, 76 NY2d 827 [1990].) In making such determination, the court must consider three factors, i.e., whether the expert’s opinion is based on a theory or technique generally accepted in the scientific community (People v Wesley, 83 NY2d 417 [1994]), the need of the jurors for specialized information (People v Cronin, supra), and the relevance of the expert’s opinion to the issue in the case (People v Allweiss, 48 NY2d 40 [1979]). (See also, People v Wernick, 89 NY2d 111 [1996].)
Initially, this court shall consider whether the witness’ theories have been generally accepted in the scientific community. The long-recognized rule of Frye v United States (54 DC App 46, 293 F 1013 [DC Cir 1923]) is that expert testimony based on scientific principles or procedures is admissible but only after a principle or procedure has “gained general acceptance” in its specified field. (People v Wesley, supra.) “It is sufficient if the expert can state his opinion with a reasonable degree of certainty (see, e.g., Matter of Miller v National Cabinet Co., 8 NY2d 277).” (People v Allweiss, supra, at 50.) A higher standard of “conclusive results” is applicable when the expert is called to assess credibility. (People v Allweiss, supra, at 50, citing People v Williams, 6 NY2d 18.)
It is incumbent upon the proponent of expert testimony to lay a proper foundation establishing that the processes and methods employed by the expert in formulating his or her opinions adhere to accepted standards of reliability within the field. (People v Wilson, 133 AD2d 179 [2d Dept 1987].) This reliability can be established in two ways. The first would be that the general acceptance would be so notorious that the court could take judicial notice. The second is that the acceptance could be established by reference to legal writings and opinions. (See generally, Prince, Richardson on Evidence § 7-311, at 476 [Farrell 11th ed].) The defense cites this court to the cases of McCoy v State (886 P2d 252 [Wyo 1994]); State v Koelling (1995 WL 125933, 1995 Ohio App LEXIS 1056 [Ohio Ct App, Mar. 21, 1995, Petree, J.]) and Matter of Krebsbach v *14 Gallagher (181 AD2d 363 [2d Dept 1992]), in which cases testimony was admitted regarding Parental Alienation Syndrome. On the other hand, the prosecution cites the court to the New York case People v Loomis (172 Misc 2d 265 [Suffolk County Ct 1997]) which specifically rejected PAS, as well as additional cases including Tungate v Commonwealth (901 SW2d 41 [Ky 1995]; cf., Floray v State, 720 A2d 1132 [Del 1998]; Page v Zordan, 564 So 2d 500 [Fla]; Interest of T.M.W., 553 So 2d 260, 262, n 3 [Fla 1989]). In the light of no clear consensus permitting PAS testimony in New York State, this court conducted a hearing at which the defendant had the opportunity to establish admissibility by offering evidence of general acceptance, including the testimony of Dr. Gardner, the leading expert in the field.
In examining this testimony, the court is not only guided by the opinion in Frye (supra), but also by the more recent case of People v Wesley (supra). In that case, the Court of Appeals examined the admissibility of DNA evidence. In her concurring opinion, Chief Judge Kaye noted (at 437, n 4) that “[i]t is not for a court to take pioneering risks on promising new scientific techniques, because premature admission both prejudices litigants and short-circuits debate necessary to determination of the accuracy of a technique.”
Based upon the testimony at the hearing, this court finds that the defendant has not established general acceptance of Parental Alienation Syndrome within the professional community which would provide a foundation for its admission at trial.