(June 20, 1996)

■ HERMAN STANSKI et al., Respondents-Appellants, v WILLIAM M. EZERSKY et al., Appellants-Respondents, et al., Defendants. [644 NYS2d 220]

On a prior appeal in this action, we held that the defendant attorneys in this legal malpractice action breached a nondelegable duty of care owed to plaintiffs, their former clients, in failing to make proper service of process in the underlying medical malpractice suit which plaintiffs had engaged them to prosecute on their behalf (*Stanski v Ezersky*, 210 AD2d 186). In remanding the matter for trial, we further held *(supra,* at 186-187) that in order to recover, "plaintiffs must demonstrate that they 'would have prevailed in the underlying action * * * if the negligence had not occurred' [citation omitted], and actual damages".

On the trial of the underlying case, plaintiffs offered evidence that following surgery at St. John's Episcopal Hospital in Queens to relieve an enlarged prostate, Mr. Stanski suffered a condition known as abdominal myoclonus, the pathology of which involves violent, jerking abdominal contractions which persisted through (and, indeed, even at) trial. He also claimed to have suffered penile burns in the course of the surgery.

In order to succeed in the medical malpractice action, it was

necessary to show a departure from the accepted standard of medical practice, and that such departure was a proximate cause of the patient's injuries (*Tungsupong v Bronx-Lebanon Hosp. Ctr.*, 213 AD2d 236, 238). Competent medical proof as to causation is usually essential (*DeCicco v Roberts*, 202 AD2d 165; *Gibson v D'Amico*, 97 AD2d 905, *lv denied* 61 NY2d 603), and was indispensable in this case. The jury found that the anesthetic Tetracaine was the proximate cause of Mr. Stanski's myoclonus. Dr. Barnett Greene, plaintiffs' expert in establishing causation, testified that it was a departure from accepted practice for the anesthesiologist (Dr. Lim) not to have waited more than 10 minutes to see if the first 12 milligrams of the anesthetic had taken effect before administering the next 8 milligrams, and that the patient had thereby been given an overdose which was the proximate cause of his myoclonus.

Even were we to assume that a departure from acceptable anesthesiology standards had been proven, plaintiffs failed to establish the essential causal link. Dr. Greene admitted that he had never before seen a case of abdominal myoclonus; he did not know of a single reported case of abdominal myoclonus caused by spinal anesthesia such as Tetracaine; and the studies he relied upon (involving some 65,000 cases) reported only one or two cases of myoclonus, but only in the legs, not the abdomen. Dr. Greene also agreed that abdominal myoclonus could occur spontaneously, without any drugs, trauma or evidence of disease—a concession which, standing alone, created a gap fatal to this claim (*Storniolo v Bauer*, 176 AD2d 550, 551, *lv denied* 79 NY2d 752). Finally, and most conclusively, Dr. Greene conceded that he could not cite a single instance where abdominal myoclonus was linked to the administration of Tetracaine. Thus, there was lacking any generally accepted basis in the scientific community for such an opinion—the minimum threshold standard (*see, People v Middleton*, 54 NY2d 42, 49; *People v Bennett*, 79 NY2d 464, 472-473; *Frye v United States*, 293 F 1013, 1013-1014). In the end, the opinion amounted to nothing more than personal speculation.

Plaintiffs called other experts in a futile attempt to buttress Dr. Greene's testimony. Dr. Sobin, a neurologist, examined Mr. Stanski two months after the surgery. He also opined that the abdominal myoclonus had been caused by a Tetracaine overdose, but admitted that he had never seen a single case of spinal anesthesia-induced abdominal myoclonus and that such result was an extreme rarity in the literature. He also conceded that myoclonus could be caused by other things, such as latent spinal cord disease. After examining Mr. Stanski and reading

his charts, neurologist Dr. Rosenblum agreed that the Tetracaine was the cause of Mr. Stanski's condition, although he stated that he would defer to Dr. Greene on the issue. The result of this additional proof merely underscored the inadequacies presented by Dr. Greene's testimony.

Mr. Stanski's penile burn injury claim also lacked sufficient evidentiary support to permit its submission to the jury. This claim rested on the theory that the burn was caused by mechanical defect in the Bovie machine, a piece of standard electrosurgical equipment used by the surgeon in the course of the operation. The jury made a special finding that this equipment was defective, but not a proximate cause of the myoclonus. The jury did find proximate cause for the burn arising from the defective machine, but plaintiffs never produced any competent proof establishing any defect in the Bovie machine. Accordingly, this aspect of the verdict also lacked a rational basis since it rested explicitly upon the court's charge, to which exception was duly taken, of res ipsa loquitur. Such a charge was manifest error here since plaintiffs' attempted proof of specific acts of negligence squarely negated any resort to that doctrine (*Abbott v Page Airways*, 23 NY2d 502; *Cunningham v Lence Lanes*, 25 AD2d 238). It may also be noted that the res ipsa doctrine could have no application to the recondite issues involving myoclonus or Bovie machine defects, matters clearly falling outside the ken of a lay jury. The res ipsa presumption assumes that the jury has familiarity with the event in question, enabling the trier of fact to make a judgment that such an event would ordinarily not occur in the absence of negligence by someone (*Dermatossian v New York City Tr. Auth.*, 67 NY2d 219, 226; *Ebanks v New York City Tr. Auth.*, 70 NY2d 621).

Since no viable compensatory award remains standing, that portion of the judgment purporting to award treble damages under Judiciary Law § 487 must also be vacated. Furthermore, on the merits, the statute has no application here, since the wrongful conduct asserted by plaintiffs occurred either when there was no longer a pending judicial proceeding or before such a proceeding commenced (*Bankers Trust Co. v Cerrato, Sweeney, Cohn, Stahl & Vaccaro*, 187 AD2d 384; *Singer v Whitman & Ransom*, 83 AD2d 862).

Were we not to dismiss this complaint in its entirety against these defendants, a more limited reversal would be required, remanding the matter for a new trial in view of several prejudicial rulings that deprived defendants of a fair trial. However, in light of our present disposition, it is unnecessary to reach

these contentions, or any of the other points of error raised by defendants. Concur—Murphy, P. J., Wallach, Ross, Nardelli and Williams, JJ.