■ ANTHONY DEL MAESTRO et al., Appellants, v MICHAEL GRECCO et al., Respondents. [791 NYS2d 139]—

In an action, inter alia, to recover damages for medical malpractice, the plaintiffs appeal from (1) an order of the Supreme Court, Richmond County (Aliotta, J.), dated June 23, 2003, which, after a hearing, granted the defendants' motion to preclude the testimony of the plaintiffs' expert, and (2) an order of the same court dated July 15, 2003, which, sua sponte, dismissed the complaint.

Ordered that on the Court's own motion, the notice of appeal from the order dated July 15, 2003, is treated as an application for leave to appeal, and leave to appeal is granted (see CPLR 5701 [c]); and it is further,

Ordered that the orders are affirmed; and it is further,

Ordered that one bill of costs is awarded to the respondents.

The infant plaintiff was born via caesarian section, preceded by 5½-hours of second-stage labor which was augmented by Pitocin. The gestational age of the infant plaintiff was 41 weeks. A cesarean section was performed due to cephalo-pelvic disproportion. The child had perfect Apgar scores of 9 at 1 minute and 10 at 5 minutes at birth. On the second day, the child experienced episodes of apnea or seizures and was transferred to intensive care. Tests performed in the days following revealed that the child suffered a left middle cerebral artery infarct, leaving him with cerebral palsy (right-sided).

The plaintiffs' expert, Dr. Leon Charash, theorized that the infant plaintiff's injuries were caused by birth trauma resulting from the compression of the child's head during prolonged second-stage labor and the mother's contractions, which were augmented by Pitocin. This, in turn, resulted in ischemia and later an infarction. The defendants contended that the infarction resulted from a clot and was unrelated to obstetrical care, and moved to preclude Dr. Charash's testimony on the ground that it lacked general acceptance in the medical community, or for a hearing pursuant to Frye v United States (293 F 1013 [1923]).

New York courts permit expert testimony based on scientific principle or procedures only after the principle, procedure, or theory has gained general acceptance in the relevant scientific field (see People v Wesley, 83 NY2d 417, 422 [1994]; Frye v

*United States, supra*). Under the *Frye* standard, the burden of proving general acceptance rests upon the party offering the disputed expert testimony (*see Saulpaugh v Krafte*, 5 AD3d 934, 935 [2004], *lv denied* 3 NY3d 610 [2004]; *Lara v New York City Health & Hosps. Corp.*, 305 AD2d 106 [2003]).

The Supreme Court properly concluded that the plaintiffs failed to meet their burden of proof of establishing that their expert's theory of causation was generally accepted in the medical community (*see Saulpaugh v Krafte, supra; Lara v New York City Health & Hosps. Corp., supra; Selig v Pfizer*, 290 AD2d 319 [2002]; *see also Stanski v Ezersky*, 228 AD2d 311 [1996]). At the hearing, Dr. Charash cited only a single reference in medical literature to support his theory, chapter 11 of Volpe's Neurology of the Newborn. However, Dr. Charash conceded that this chapter dealt with premature babies and that the infant plaintiff was full-term. When questioned about this point, Dr. Charash testified that it could be inferred that full-term babies suffered the same risks. However, Dr. Charash was unable to cite a single case in scientific literature where the same phenomenon was ever observed with respect to full-term infants. The only other proof proffered by the plaintiffs, submitted in their opposition papers, was an article by Uros Roessmann and R. Tyler Miller entitled "Thrombosis of the Middle Cerebral Artery Associated with Birth Trauma." This article noted that cerebral infarction in newborns is rare, and reported one case involving a full-term infant delivered by cesarean section after a high forceps delivery was attempted. No forceps were used in the case of the infant plaintiff, nor was the kind of massive or severe trauma that occurred in the reported case study present here. Given the lack of medical literature, or even a single reported case study to support the plaintiffs' theory of causation that prolonged contractions in labor are an associated risk for left middle cerebral artery infarct in full-term infants, the Supreme Court properly granted the defendants' motion to preclude. Having done so, the Supreme Court also properly dismissed the complaint. H. Miller, J.P., Luciano, Rivera and Lifson, JJ., concur.