Terehoff v Frenkel

2026 NY Slip Op 02688

April 29, 2026

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

John Terehoff, etc., respondent-appellant,

v

Rubin Frenkel, etc., et al., appellants-respondents.

Supreme Court of the State of New York, Appellate Division, Second Judicial Department

Decided on April 29, 2026

2020-09449, (Index No. 6166/10)

Francesca E. Connolly, J.P.

Valerie Brathwaite Nelson

Phillip Hom

Elena Goldberg Velazquez, JJ.

Kutner Friedrich, LLP (Martin Clearwater & Bell, LLP, New York, NY [Barbara D. Goldberg and Charles E. Kutner], of counsel), for appellants-respondents.

Schwartz Goldstone Campisi & Kates, LLP (Pollack, Pollack, Isaac & DeCicco, LLP, New York, NY [Brian J. Isaac and Kenneth J. Gorman], of counsel), for respondent-appellant.

[*1]

DECISION & ORDER

In an action to recover damages for medical malpractice, the defendants appeal, and the plaintiff cross-appeals, from a judgment of the Supreme Court, Kings County (Michelle Weston, J.), dated September 14, 2020. The judgment, insofar as appealed from, upon an order of the same court (Marsha L. Steinhardt, J.) dated June 1, 2016, denying that branch of the defendants' motion which was to preclude the plaintiff from offering evidence on a certain theory of causation, and upon a jury verdict in favor of the plaintiff on the issue of liability and awarding the plaintiff damages, inter alia, in the sum of $2,250,000 for past pain and suffering, is in favor of the plaintiff and against the defendants. The judgment, insofar as cross-appealed from, failed to award the plaintiff damages for future pain and suffering.

ORDERED that the judgment is reversed insofar as appealed from, on the law, that branch of the defendants' motion which was to preclude the plaintiff from offering evidence on a certain theory of causation is granted, the order dated June 1, 2016, is modified accordingly, and the matter is remitted to the Supreme Court, Kings County, for a new trial; and it is further,

ORDERED that the cross-appeal is dismissed as academic in light of our determination on the appeal; and it is further,

ORDERED that one bill of costs is awarded to the defendants.

The plaintiff, an infant by his mother and natural guardian, commenced this action to recover damages for medical malpractice against the defendants, the mother's obstetrician and his medical practice. The plaintiff alleged that the defendants failed to diagnose the mother's preterm labor, causing the plaintiff to be born premature and to have a low birth weight. The plaintiff was born premature at 25 weeks weighing 770 grams and was later diagnosed with autism.

The plaintiff alleged that his premature birth caused autism spectrum disorder-pervasive developmental delay. Prior to trial, the defendants moved, inter alia, to preclude the plaintiff from offering evidence on causation of autism spectrum disorder-pervasive developmental [*2]delay. The defendants argued that the plaintiff's theory of causation has not gained general acceptance in the medical community. After a hearing pursuant to Frye v United States (293 F 1013 [DC Cir]), the Supreme Court denied that branch of the defendants' motion.

At trial, the mother testified that she was treated by the defendants. The plaintiff presented the testimony of Marilyn A. Robertson, a physician board certified in obstetrics and gynecology, who testified that the defendants departed from accepted practice when treating the mother because they failed to diagnose her with preterm labor. Robertson opined that because of the defendants' failure to diagnose the mother with preterm labor, they also failed to provide treatment that would have stopped the preterm labor and prolonged the pregnancy by at least two weeks. The plaintiff also presented the testimony of Allan Rubenstein, a physician board certified in neurology, who testified that the failure to extend the pregnancy two weeks was a substantial factor in the plaintiff being diagnosed with autism and related disability.

At the conclusion of the trial, the jury found that the defendants departed from the applicable standard of care by failing to diagnose the mother with preterm labor and that this departure was a substantial factor in causing the plaintiff to be diagnosed with autism. The jury awarded the plaintiff damages, inter alia, in the sum of $2,250,000 for past pain and suffering. The jury did not award the plaintiff damages for future pain and suffering. Thereafter, the Supreme Court issued a judgment in favor of the plaintiff and against the defendants. The defendants appeal, and the plaintiff cross-appeals.

"In determining the admissibility of expert testimony, New York follows the rule of Frye v United States that expert testimony based on scientific principles or procedures is admissible but only after a principle or procedure has gained general acceptance in its specified field" (Lugo v New York City Health & Hosps. Corp., 89 AD3d 42, 55 [citation and internal quotation marks omitted]; see People v Wesley, 83 NY2d 417, 422). The burden of proving general acceptance rests upon the party offering the disputed expert testimony (see Zito v Zabarsky, 28 AD3d 42, 44; Del Maestro v Grecco, 16 AD3d 364, 366). A Frye inquiry "is not concerned with the reliability of a certain expert's conclusions, but instead with whether the experts' deductions are based on principles that are sufficiently established to have gained general acceptance as reliable" (Lugo v New York City Health & Hosps. Corp., 89 AD3d at 56 [internal quotation marks omitted]).

New York courts expanded Frye beyond the results of scientific testing and measurement procedures and have applied it to determine the reliability of psychological and physiological theories or syndromes and also an expert's theory of causation as to a particular matter (see id. at 57). "[W]hen the Frye test is applied to a theory of causation, 'the court's concern must be limited to making sure that within the scientific field in question, there is a substantive, demonstratable, objective basis for the expert's conclusion,' and . . . '[t]he focus of the inquiry in such an instance should not be upon how widespread the theory's acceptance is, but should instead consider whether a reasonable quantum of legitimate support exists in the literature for the expert's views'" (id. at 62, quoting Marsh v Smyth, 12 AD3d 307, 312). The theory of causation that is being challenged must be "based upon more than theoretical speculation, or a scientific hunch" (Zito v Zabarsky, 28 AD3d at 46 [internal quotation marks omitted]). The determination under Frye does not decide who is right or wrong but whether there is relevant scientific data and studies to support the causation theory (see Lugo v New York City Health & Hosps. Corp., 89 AD3d at 56).

This Court has previously addressed the distinction between studies that demonstrate an association and those that establish medical or legal causation (see Ratner v McNeil-PPC, Inc., 91 AD3d 63, 76-77). Expert testimony is properly precluded when it merely provides a causal inference or association based upon extrapolation from observational studies (see id. at 74). "Deduction, extrapolation, drawing inferences from existing data, and analysis are not novel methodologies and are accepted stages of the scientific process" (id.). However, "'[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered'" (id. at 75, quoting General Elec. Co. v Joiner, 522 US 136, 146).

The plaintiff sought to use Rubenstein's testimony to prove that the mother's preterm [*3]labor and the plaintiff's low birth weight were substantial factors in causing the plaintiff's diagnosis of autism. Rubenstein testified at the Frye hearing that his theory was one of association or causal inference as to low birth weight, prematurity, and autism. However, his testimony did not rise to the level of causation. Rubenstein's Frye hearing testimony reaffirmed that the causes of autism are unknown and that his opinion was supported by several observational studies. "'[O]bservational studies or case reports are not generally accepted in the scientific community on questions of causation'" (id. at 76, quoting Heckstall v Pincus, 19 AD3d 203, 205).

There was no testimony at the Frye hearing that any of the studies Rubenstein relied upon concluded that premature birth causes autism. Rather, Rubenstein's testimony established that the exact mechanism of how autism develops is unknown and that studies found a causal inference or association between prematurity and autism, not a causal relationship. Further, there was no testimony elicited at the Frye hearing that demonstrated that the medical community, specifically pediatric neurologists, have accepted that prematurity causes autism or even that a child's birth at 25 weeks versus 27 weeks increases that child's risk of later being diagnosed with autism. In any event, the gap between the statistical analysis relied upon by Rubenstein regarding the prevalence of autism in preterm, low-birth-weight infants and his testimony that the pathophysiology and causes of autism are unknown was too great to allow him to opine as to his theory of causation in this action. Based upon the foregoing, the Supreme Court erred in denying that branch of the defendants' motion which was to preclude Rubenstein's testimony on this theory of causation.

In light of our determination, the plaintiff's cross-appeal has been rendered academic, as we need not reach the parties' contentions regarding the award of damages by the jury.

Accordingly, we remit the matter to the Supreme Court, Kings County, for a new trial.

CONNOLLY, J.P., BRATHWAITE NELSON, HOM and GOLDBERG VELAZQUEZ, JJ., concur.

ENTER:

Darrell M. Joseph

Clerk of the Court