(August 15, 2002)

■ Nancy McCarthy et al., Appellants, v Robert Handel, Individually and Doing Business as Tanglewood Ranch, et al., Respondents, et al., Defendants. [746 NYS2d 209] —Spain, J.

Plaintiff Nancy McCarthy (hereinafter plaintiff) and her husband, derivatively, commenced this action following a February 1987 snowmobiling accident in which plaintiff struck a tree and was injured. Plaintiff was operating a snowmobile rented from defendant Roy Handel, then age 25, who had created a course and was conducting a snowmobile rental business on undeveloped land in the Town of Durham, Greene County, which was owned by his mother, defendant Virginia Handel. Virginia Handel and defendant Robert Handel jointly owned the property adjacent to this land, on which their home was located and where they operated a seasonal horseback riding business through a corporation solely owned by them, defendant Tanglewood Ranch Inc. Plaintiffs alleged that Roy Handel, Robert Handel, Virginia Handel and Tanglewood had

---

been negligent in the operation and maintenance of the land and the snowmobile rental business and had failed to afford patrons proper warnings and protection. Plaintiffs also named as defendants the manufacturer and distributor of the 1978 Yamaha snowmobile that plaintiff was operating at the time of the accident, defendants Yamaha Motor Corporation U.S.A. and Yamaha Motor Company Ltd., respectively (hereinafter collectively referred to as Yamaha). Plaintiffs asserted claims against Yamaha for, among others, manufacturing and design defects, breach of warranty and failure to warn.

Following joinder of issue and some discovery, the parties made various motions regarding expert witness disclosure, resulting in three pretrial orders between 1995 and 1998 by Supreme Court (Cobb, J.), the final of which limited plaintiffs' expert witness testimony concerning plaintiffs' product liability claims (i.e., failure to warn and manufacturing and design defect claims) against Yamaha. At the close of plaintiffs' case during the ensuing jury trial, plaintiffs abandoned their manufacturing defect and breach of warranty claims against Yamaha, and Supreme Court (Lalor, J.) dismissed the action against Tanglewood. At the close of proof, Supreme Court, inter alia, granted motions by Robert Handel and Virginia Handel (hereinafter collectively referred to as the Handels) to dismiss the case against them, and dismissed plaintiffs' failure to warn claims. As a result, the only causes of action submitted to the jury were for Roy Handel's negligence and defective design by Yamaha. Since Roy Handel had sold the snowmobile in issue for parts approximately a year after this accident and it could not be located, the jury was charged regarding spoliation. Plaintiffs' theory at trial was that the snowmobile had malfunctioned in that the brakes failed or the throttle stuck, whereas defendants asserted that plaintiff had confused the throttle lever for the brakes, causing the accident. The jury returned a verdict finding plaintiff 70% negligent and Roy Handel 30% negligent and dismissing the remaining claim against Yamaha.

Plaintiffs appeal contending that Supreme Court erred in dismissing the case against the Handels and Tanglewood and challenging the court's pretrial orders limiting the testimony of plaintiffs' experts. They also allege error in the court's rulings precluding certain expert testimony and other evidence. We affirm.

Viewing the evidence adduced at trial in the light most favorable to plaintiffs, as we must (*see*, CPLR 4401; *Butler v New York State Olympic Regional Dev. Auth.*, 292 AD2d 748, 750),

we find no basis upon which the jury could have found in favor of plaintiffs on their negligence claims against Robert Handel or Tanglewood and, thus, find that Supreme Court correctly granted their dismissal motions. The evidence established that Robert Handel did not own or possess the property where plaintiff was injured snowmobiling and had no material involvement in or control over Roy Handel's operation of his snowmobile rental business and, as such, owed no duty of care to plaintiff (*see, Fessler v Brunza*, 89 AD2d 640, 641, citing *Palsgraf v Long Is. R.R. Co.*, 248 NY 339; *see also*, PJI3d 2:90 [2002]). Neither the fact that Robert Handel was present at the time of the accident, on an informal visit with his son, nor the fact that plaintiff handed Robert Handel the money to pay for the rental, which he immediately handed to his son, would support imposing a duty or liability on Robert Handel.

Likewise, Supreme Court properly dismissed plaintiffs' claims with regard to Tanglewood, a corporation jointly owned by the Handels through which they ran their horseback riding business on their adjacent land. Significantly, Tanglewood did not own and had no involvement in or control of any type over the property or Roy Handel's snowmobile rental business. The sole evidence on which plaintiffs relied to impose liability on Tanglewood was a Greene County travel guide listing snowmobile rentals at a scenic mountain trail "[n]ext to Tanglewood Ranch" and listing the Handels' home phone number, a number which was also used for Tanglewood and for Roy Handel, who lived with his parents at the time and shared their phone. Although Roy Handel admitted that he had distributed his own circulars advertising his snowmobile rental business described as located "next to Tanglewood Ranch," neither he nor his parents had requested that his business be listed in the snowmobile section of the travel guide. This scant evidence utterly failed to provide any basis upon which to impose a duty on Tanglewood.

Turning to Virginia Handel, the sole owner of the property on which Roy Handel operated the snowmobile rental business, plaintiffs' negligence claim was premised on allowing Roy Handel to conduct this business on her property without ensuring that the course was properly designed and that the machines worked properly. Virginia Handel testified that while she was aware that her son was renting out snowmobiles on the site, he had not asked permission to do so;[1] she had no involvement or role of any kind in his business, was not present at the time of the accident and received no remuneration.

---

1. Indeed, the Handel family had mistakenly believed that Robert Handel and not Virginia Handel owned the subject property.

Under well-settled law, "[l]iability will be imposed if a landowner knows that he [or she] can and has the opportunity to control the conduct of others and is reasonably aware of the necessity for such control" but, "[a]s a general rule, the owner of premises owes no duty to control the conduct of its tenants for the benefit of third persons" (*Toma v Charbonneau*, 186 AD2d 846, 847; *see, Cavaretta v George*, 265 AD2d 801, 802; *Cavanaugh v Knights of Columbus Council 4360*, 142 AD2d 202, 204, *lv denied* 74 NY2d 604). While Roy Handel did not formally lease the property, Virginia Handel's role was the functional equivalent of an out-of-possession landlord who, absent control over the premises or over the operation of the business conducted thereon, cannot be held liable for injuries which occur on his or her property (*see, Hinds v Consolidated Rail Corp.*, 263 AD2d 590, 591; *Borelli v 1051 Realty Corp.*, 242 AD2d 517, 517; *Winter v Jimmy's Lakeside Inn*, 200 AD2d 826, 827; *Clarke v Unanue*, 97 AD2d 888, 888-889).

Plaintiffs conceded at trial that there was no defective condition in the property (*see*, PJI3d 2:91 [2002]), and Supreme Court properly ruled that Virginia Handel's acquiescence in her son's operation of this rental operation on land to which she was proven to be the title holder was insufficient to impose a duty on her to plaintiffs (*see, Cavanaugh v Knights of Columbus Council 4360, supra* at 204; *Fessler v Brunza*, 89 AD2d 640, *supra; see also*, PJI3d 2:90 [2002]). Thus, dismissal as to Virginia Handel was proper.[2]

The balance of plaintiffs' appellate contentions concern the pretrial and trial rulings regarding the scope of plaintiffs' expert testimony and proof, which they claim, inter alia, contributed to the jury's rejection of their design defect claim against Yamaha. To the extent that plaintiffs challenge the January 1998 order of Supreme Court (Cobb, J.) limiting plaintiffs' expert witness testimony, we discern no abuse of discretion or basis upon which to disturb that ruling where plaintiffs had been twice warned that their responses to Yamaha's expert demands were inadequate and would result in preclusion unless plaintiffs complied (*see, Andon v 302-304 Mott St. Assoc.*, 94 NY2d 740, 745; *Osterhoudt v Wal-Mart Stores*, 273 AD2d 673, 674; *see also*, CPLR 3126). Notably, in response to Yamaha's motion to preclude, the court ruled, by

2. The parties did not raise any issue with respect to General Obligations Law § 9-103, the recreational use statute, as to whether Virginia Handel owed a duty to keep her property safe for snowmobilers, where she received no compensation for their use of her land (*see, e.g., Dean v Glens Falls Country Club*, 170 AD2d 798).

order dated May 3, 1995, inter alia, that while plaintiffs were not required to prove that any specific component or portion of the throttle design was defective to support their design defect cause of action, if plaintiffs' expert was aware of any specific defects and would testify to them at trial, plaintiffs were required by CPLR 3101 (d) to disclose them and the basis for the expert's opinion. When plaintiffs failed to sufficiently respond, Yamaha again moved, resulting in a June 19, 1996 order by Supreme Court (Cobb, J.) clarifying that "plaintiffs shall be precluded from offering any testimony of specific defects unless plaintiffs provide a further statement detailing the nature of such defects within 30 days." Some 18 months later, just before trial, Yamaha moved to preclude and Supreme Court (Cobb, J.) issued the challenged January 1998 order finding, inter alia, that "[p]laintiffs have failed to offer any expert disclosure with respect to any specific defect in the subject snowmobile, any manufacturing defect, failure to warn, postsale duty to warn, or snowmobile accident statistics, or any defects in the brakes, steering mechanism, or emergency cutoff switch of the subject snowmobile" and, thus, ruled that plaintiffs were precluded from offering any expert testimony with respect to these issues. Based upon the foregoing, the court justifiably concluded that plaintiffs' prolonged failure to supplement their CPLR 3101 (d) (1) (i) disclosure by, inter alia, specifying the alleged defects, justified precluding plaintiffs' expert from testifying regarding such nondisclosed matters (*see,* CPLR 3126 [2]; *Walsh v Liberty Mut. Ins. Co.,* 289 AD2d 842, 843; *Cramer v Englert,* 289 AD2d 617, 618-619, *lv denied* 98 NY2d 604; *Qian v Dugan,* 256 AD2d 782; *Chapman v State of New York,* 189 AD2d 1075; *see also, Kihl v Pfeffer,* 94 NY2d 118, 122-123).

Next, while Supreme Court may arguably have implicitly employed, in part, the scientific reliability test (*see, Daubert v Merrell Dow Pharms.,* 509 US 579), rather than the controlling general acceptance test (*see, People v Wesley,* 83 NY2d 417, 435; *see also, Frye v United States,* 293 F 1013), in ruling at trial that plaintiffs' expert would be prohibited from testifying as to the prior testing of throttle cables, the testimony was otherwise subject to exclusion based upon plaintiffs' failure to lay a proper foundation (*see, People v Wesley, supra* at 422, 425, 428-429; *Rainbow v Elia Bldg. Co.,* 79 AD2d 287, 293, *affd* 56 NY2d 550). Plaintiffs' expert did not perform the tests and the tests were not performed on a Yamaha throttle but, rather, were performed in 1983 or 1984 on an unidentified machine which was manufactured on an unspecified date in the mid-1970s. Among the substantial "unknowns" were the

number of tests, the specifics of the testing procedures and the mileage and maintenance history of the tested machines, and no records of the tests were provided. Thus, even if plaintiffs' showing satisfied the *Frye* test regarding scientific evidence, a doubtful conclusion on this record, plaintiffs failed to offer any foundational proof, as required for the admission of all evidence at trial, regarding the adequacy of the specific procedures used to test the throttle cables so as to establish the admissibility of this evidence (*see, People v Wesley, supra* at 422, 428-429).

Likewise without merit is plaintiffs' claim that Supreme Court erred in excluding testimony by their expert regarding three patents which plaintiffs argued reflected alternative, safer throttle designs available to Yamaha when it manufactured the subject snowmobile in 1978, and in excluding evidence of postmanufacture, preaccident modifications. The court reminded plaintiffs that the pretrial preclusion order forbade their expert from testifying that the absence of an available alternative throttle safety mechanism constituted a defect, but nevertheless entertained an offer of proof addressed to the admissibility of the patents to show the feasibility in 1978 of alternate throttle designs, 1978 being the year when the snowmobile in issue was manufactured. The court thereafter prohibited testimony regarding three of the patents, ruling that (1) the patent issued in November 1977 was published too late for incorporation into a machine manufactured in 1978, (2) with regard to the two patents issued earlier, in 1974 and 1975, plaintiffs had failed to demonstrate that their designs were state of the art or feasible at the time this snowmobile was manufactured, and (3) none of the three patents had been previously disclosed under CPLR 3101 (d). The court did allow testimony regarding Yamaha's patent, applied for in 1976, to show its design choice, despite plaintiffs' lack of disclosure. The court also precluded evidence of Yamaha's postmanufacture, preaccident design changes based upon plaintiffs' failure to show their feasibility in 1978 or the applicability of this evidence to the failure to warn claim.

We perceive no error in these rulings and plaintiffs fail to identify any. Here, the gist of plaintiffs' claims against Yamaha were that the snowmobile was defectively designed—indeed, plaintiffs abandoned their manufacturing defect and breach of warranty claims against Yamaha at the close of their proof. Plaintiffs' offer of proof regarding alternative design options and the evidence of the postmanufacture, preaccident modification failed to establish either their feasibility in 1978 or the

relevance of the modifications to their failure to warn claim (dismissed at the close of the proof) or to some other relevant fact in issue (*see, Perazone v Sears, Roebuck & Co.*, 128 AD2d 15, 17, 18 n, 19; *see also, Haran v Union Carbide Corp.*, 68 NY2d 710; *Cover v Cohen*, 61 NY2d 261, 270-271; *Rainbow v Elia Bldg. Co.*, 56 NY2d 550, *affg* 79 AD2d 287, *supra*; *Caprara v Chrysler Corp.*, 52 NY2d 114).

We have considered plaintiffs' remaining contentions and determine that they lack merit.

Mercure, J.P., Crew III, Mugglin and Rose, JJ., concur. Ordered that the judgment is affirmed, without costs.