■ ERIC PARKER, Respondent, v MOBIL OIL CORPORATION et al., Appellants, and ISLAND TRANSPORTATION CORPORATION et al., Defendants and Third-Party Plaintiffs-Appellants. EXXON MOBIL CORPORATION et al., Third-Party Defendants-Appellants. [793 NYS2d 434]—

In an action to recover damages for personal injuries, (1) the defendant third-party defendant Mobil Oil Corporation and the third-party defendant Exxon Mobil Corporation appeal, as limited by their brief, from so much of an order of the Supreme Court, Nassau County (Lally, J.), dated August 20, 2003, as denied their motion in limine to preclude the plaintiff from introducing expert testimony regarding medical causation and for summary judgment dismissing the complaint and all third-party claims and cross claims insofar as asserted against them, (2) the defendant third-party plaintiff, Getty Petroleum Marketing, Inc., appeals from so much of the same order as denied its motion in limine to preclude the plaintiff from introducing

expert testimony regarding medical causation and for summary judgment dismissing the complaint insofar as asserted against it, (3) the defendant second and fifth third-party plaintiff, Island Transportation Corporation, appeals from so much of the same order as denied its cross motion in limine to preclude the plaintiff from introducing expert testimony regarding medical causation and for summary judgment dismissing the complaint and all cross claims insofar as asserted against it, and (4) the third-party defendant/fourth third-party plaintiff New York Oil Products, Inc., appeals from the same order.

Ordered that the appeal of the third-party defendant fourth third-party plaintiff New York Oil Products, Inc., is dismissed as abandoned (see 22 NYCRR 670.8 [c], [e]); and it is further,

Ordered that the order is reversed insofar as appealed from by Mobil Oil Corporation, Exxon Mobil Corporation, Getty Petroleum Marketing, Inc., and Island Transportation Corporation, on the law, the motions and cross motion are granted, the complaint is dismissed in its entirety, and the third-party complaint is dismissed insofar as asserted against Mobil Oil Corporation and Exxon Mobil Corporation; and it is further,

Ordered that one bill of costs is awarded to Mobil Oil Corporation, Exxon Mobil Corporation, Getty Petroleum Marketing, Inc., and Island Transportation Corporation, appearing separately and filing separate briefs.

The plaintiff was diagnosed with acute myelogenous leukemia (hereinafter AML) in September 1998. He commenced this action against the defendants Mobil Oil Corporation, Island Transportation Corporation, and Getty Petroleum Marketing, Inc., alleging that he contracted AML as a result of his 17-year occupational exposure to gasoline containing benzene, a known human carcinogen. The plaintiff alleged that, during his employment as a gasoline station attendant, he inhaled gasoline vapors and had dermal contact with gasoline containing benzene on a daily basis. Various third-party claims and cross claims arose out of the instant action.

The defendant third-party defendant, Mobil Oil Corporation, and the third-party defendant, Exxon Mobil Corporation (hereinafter Mobil/Exxon), moved in limine to preclude the plaintiff from introducing expert testimony at trial regarding medical causation alleging that the theory of causality of the plaintiff's experts was inadmissible as unreliable and not generally accepted in the relevant scientific community, and for summary judgment dismissing the complaint and all third-party claims and cross claims insofar as asserted against them, arguing that, in the event their motion in limine was granted and the expert's

testimony was precluded, the plaintiff's would be unable to establish medical causation. The defendant third-party plaintiff, Getty Petroleum Marketing, Inc., moved and the defendant second and fifth third-party plaintiff, Island Transportation Corporation, and the third-party defendant fourth third-party plaintiff, New York Oil Products, Inc., separately cross-moved for similar relief. The Supreme Court denied the motions and cross motions. We reverse insofar as appealed from by Mobil Oil Corporation, Exxon Mobil Corporation, Getty Petroleum Marketing, Inc., and Island Transportation Corporation.

We note that this matter raises a preliminary issue regarding appealability, as the appellants, with the exception of New York Oil Products, Inc. (hereafter collectively the appellants), whose appeal has been dismissed as abandoned, appeal from so much of an order as denied their separate motions in limine. Generally, an order deciding a motion in limine is not appealable, since an order, made in advance of trial which merely determined the admissibility of evidence is an unappealable advisory ruling (*see Rondout Elec. v Dover Union Free School Dist.,* 304 AD2d 808, 810 [2003]; *Chateau Rive Corp. v Enclave Dev. Assoc.,* 283 AD2d 537 [2001]; *Savarese v City of New York Hous. Auth.,* 172 AD2d 506, 509 [1991]). However, an order which limits the scope of issues to be tried is appealable (*see Rondout Elec. v Dover Union Free School Dist., supra*).

In the instant matter, the appellants moved and cross-moved to preclude expert testimony regarding medical causation and for summary judgment, since, if the motions in limine were granted, the plaintiff would be unable to prove causation and would not be able to prevail on his claims. Thus, the appellants did not improperly seek the relief of dismissal only through motions in limine (*cf. Downtown Art Co. v Zimmerman,* 232 AD2d 270 [1996]). Such motions go to the very merits of the controversy and, if granted, would render the plaintiff's case meritless. Under these circumstances, the resulting order, whether granting the motions and cross motion and rendering the plaintiff's case meritless, or denying them, affected a substantial right of the parties. Thus, they are appealable (*see City of New York v Mobil Oil Corp.,* 12 AD3d 77 [2004]; *Scalp & Blade, Inc. v Advest, Inc.,* 309 AD2d 219, 223-225 [2003]).

Turning to the merits, this matter raises the issue of when certain scientific expert testimony is admissible. Expert testimony is admissible provided that the principles and methodology relied upon by the expert have gained general acceptance as being reliable within the scientific community (*see Frye v United States,* 293 F 1013 [1923]; *People v Wesley,* 83

NY2d 417, 422-423 [1994]). Generally accepted reliability of the proffered testimony can be demonstrated through scientific or legal writings, judicial opinions, or expert opinion other than that of the proffered expert (see *Tavares v New York City Health & Hosps. Corp.,* 2003 NY Slip Op 51278[U] [2003]; *Zafran v Zafran,* 191 Misc 2d 60, 63 [2002]; *Cameron v Knapp,* 137 Misc 2d 373, 375 [1987]). The burden is on the proponent to demonstrate the generally accepted reliability of the proffered testimony (see *Zafran v Zafran, supra; Selig v Pfizer, Inc.,* 185 Misc 2d 600, 605 [2000], *affd* 290 AD2d 319 [2002]).

At issue in the instant matter is to what extent the plaintiff was required to establish the precise level of his exposure to benzene in order to establish that his AML was caused by it through a scientifically-reliable methodology. A scientifically-reliable methodology that is recommended by the World Health Organization and the National Academy of Sciences for drawing a sound conclusion as to the relationship between an individual's disease and a specific factor suspected of causing that disease entails a three-step process. This three-step process includes: (1) a determination of the plaintiff's level of exposure to the toxin in question, (2) from a review of the scientific literature, proof that the toxin is capable of producing the illness, or general causation, and the level of exposure to the toxin which will produce that illness (i.e., the dose-response relationship) must be ascertained, and (3) establishment of specific causation by demonstrating the probability that the toxin caused the particular plaintiff's illness, which involves weighing the possibility of other causes of the illness. This three-step process has been acknowledged in numerous cases as generally accepted and reliable (see e.g. *Mancuso v Consolidated Edison Co. of New York, Inc.,* 56 F Supp 2d 391, 399 [1999]; *In re Joint E. & S. Dist. Asbestos Litig.,* 52 F3d 1124, 1131 [1995]; *Wills v Amerada Hess Corp.,* 2002 WL 140542, 2002 US Dist LEXIS 1546 [SD NY Jan. 31, 2002]; *Amorgianos v National R.R. Passenger Corp.,* 303 F3d 256, 268 [2002]; *Castellow v Chevron,* 97 F Supp 2d 780, 795-798 [2000]; *Frias v Atlantic Richfield Co.,* 104 SW3d 925, 928 [Tex 2003]). We note that although federal courts use the broader *Daubert* test (see *Daubert v Merrell Dow Pharms.,* 509 US 579 [1993]) instead of the *Frye* standard (see *Frye v United States, supra*) in connection with determining the admissibility of scientific expert testimony, it is instructive to examine federal authority for purposes of discussion of accepted scientific methodology.

In support of his contention that his AML was caused by exposure to gasoline containing benzene, the plaintiff relied

upon the expert testimony of two witnesses, Drs. Phillip Landrigan and Bernard Goldstein. In their reports submitted in connection with the plaintiff's opposition to the appellants' motions, neither doctor articulated with any specificity the level of benzene to which the plaintiff was exposed. Dr. Landrigan, based upon the plaintiff's recitation to him regarding his daily occupational activities, merely described his exposure to gasoline as "extensive" and concluded that he had "abundant opportunity for exposure to benzene" and "ample opportunity for percutaneous exposure to benzene." Dr. Goldstein made even less of an attempt to quantify the plaintiff's exposure, merely stating in conclusory fashion that the plaintiff had "far more exposure to benzene" than did the subjects of a study of oil refinery workers, in which it was concluded that there was a link between increased levels of benzene exposure and leukemia.

The plaintiff presented no evidence of the concentration level of benzene in the gasoline to which he was exposed. His experts failed to quantify his exposure in the typically utilized unit of measurement of parts per million factored against the duration of time to which the plaintiff was exposed, commonly referred to as a time-weighted average. Without any quantification of the plaintiff's level of exposure to benzene, required by the first part of the above described three-step process, the second part of that process, i.e., ascertaining the threshold level of benzene exposure which has been proven to cause AML (the parties do not dispute that a certain level of benzene exposure has been proven to cause AML) loses any significance. Even if the plaintiff quantified this threshold level of exposure, he failed to quantify his own level of exposure, rendering it impossible to determine whether he exceeded the threshold. Various courts have rejected expert opinions that also failed to quantify the alleged level of exposure to the toxin in question or failed to account for the dose-response relationship (*see e.g. Wills v Amerada Hess Corp., supra; Whiting v Boston Edison Co.,* 891 F Supp 12, 25 [1995]; *Sutera v Perrier Group of Am. Inc.,* 986 F Supp 655 [1997]; *Frias v Atlantic Richfield Co., supra* at 930).

However, Dr. Landrigan also reported that studies have shown there is no threshold level of benzene exposure below which leukemia cannot result. In layman's terms, this approach, referred to as a "linear non-threshold model," assumes that "if a lot of something is bad for you, a little of the same thing, while perhaps not equally bad, must be so in some degree. The model rejects the idea that there might be a threshold at which the neutral or benign effects of a substance become toxic" (*Whiting*

*v Boston Edison Co., supra* at 23). However, the scientific reliability of this methodology has flatly been rejected as merely a hypothesis (*see Wills v Amerada Hess Corp, supra; Whiting v Boston Edison Co., supra; Sutera v Perrier Group of Am. Inc., supra* at 666).

Furthermore, the plaintiff's attempt to suggest that other expert opinions support this theory is misguided, as he cited studies which merely state that no level of benzene exposure can be considered "safe." Of course, stating that any exposure to benzene is "unsafe" is not tantamount to stating that any exposure to benzene causes AML. Furthermore, the plaintiff's reference to regulatory standards regarding benzene exposure was not compelling evidence, as such standards are not measures of causation but rather are public health exposure levels determined by agencies pursuant to statutory standards set by the United States Congress (*see Sutera v Perrier Group of Am., supra* at 664; *Wills v Amerada Hess, supra*).

Thus, contrary to the plaintiff's contention, it was evident that his experts did not use the three-step process for establishing medical causation as set forth by the World Health Organization and National Academy of Sciences. Dr. Landrigan made non-specific conclusions regarding the plaintiff's level of exposure to benzene using indefinite terminology, and Dr. Goldstein merely stated, without any quantitative support, that the plaintiff's exposure to benzene was greater than that of the subjects of an oil refinery study. Thus, any conclusions as to the plaintiff's level of exposure to benzene and whether the exposure was substantial enough to cause AML, were purely speculative (*see Frias v Atlantic Richfield Co., supra* at 930).

The studies upon which the plaintiff's experts relied ultimately reached the conclusion that increased levels of exposure to benzene have been shown to cause leukemia, a fact not disputed by the parties. However, the plaintiff's experts failed to make a casual connection, based upon a scientifically-reliable methodology, between the plaintiff's specific level of exposure to benzene in gasoline and his AML.

The plaintiff relied upon *Warren v Sabine Towing & Transp. Co.* (831 So 2d 517 [La 2002]) for his contention that a scientifically-reliable conclusion that an individual's AML was caused by benzene exposure can be based upon assertions that the individual's exposure to benzene was "significant." While the court in that case summarized the experts' conclusions, in effect, that the decedent's "significant" exposure to pure benzene and benzene containing products was a significant contributing cause to his AML, it did not discuss the methodolo-

gies the experts used in reaching such conclusions, nor explain why it accepted them. To the extent that those experts' opinions were not based upon any scientific data or methodology, the court's analysis in *Warren (id.)* is flawed for the same reasons as the plaintiff's analysis is flawed here. The plaintiff's argument that his exposure to benzene was "far greater" than that of the *Warren (id.)* decedent only demonstrated the speculative nature of the expert opinions in *Warren (id.)* and in this case of categorizing the exposure by using indefinite terminology. In addition, the plaintiff failed to consider that the *Warren (id.)* plaintiff was exposed to, in addition to gasoline containing benzene, pure benzene and other benzene-containing products, many of which had a higher concentration of benzene than does gasoline.

Accordingly, the plaintiff's expert testimony should have been precluded on the ground that it was not scientifically reliable and therefore inadmissible. We note that a *Frye* hearing (*see Frye v United States, supra*) was not necessary under the circumstances here, where it was not requested by any of the parties and where the parties exhausted their arguments and authorities in their submissions (*see Selig v Pfizer, Inc., supra* at 607).

Since the appellants established, as a matter of law, that the plaintiff could not establish medical causation, the Supreme Court should have granted the motions and cross motion for summary judgment (*see Gadman v Catalfo,* 251 AD2d 370 [1998]; *Cobb v New York City Hous. Auth.,* 251 AD2d 362 [1998]; *Shinn v Lefrak Org.,* 239 AD2d 335 [1997]).

In light of our determination, the appellants' remaining contention need not be reached. Florio, J.P., Schmidt, Rivera and Lifson, JJ., concur.