OPINION OF THE COURT
Raymond E. Cornelius, J.
David A. DeMeyer died on December 29, 2004, after having commenced a personal injury action against the above-named defendants, based upon claims of occupational exposure to asbestos products. Thereafter, Dorothy A. DeMeyer, executrix for the estate of her late spouse, was substituted as plaintiff, and the complaint was amended to include a cause of action for wrongful death. Pursuant to a scheduling order, as authorized by the Seventh Judicial District Asbestos Litigation Case Management Order, counsel for the plaintiff provided expert witness disclosure, which included a report from two medical doctors, Jacqueline Moline and Jerrold L. Abraham.*
The reports from both experts referenced Mr. DeMeyer’s occupational exposure to asbestos products while employed as a machine operator, in addition to other jobs, at Garlock, Inc., from approximately 1967 until 1982, and thereafter, as owner and operator of “Tire Rack.” Dr. Moline, who is board certified in internal medicine and preventive medicine, and specializes in occupational health, concluded that Mr. DeMeyer, who was 55 years of age, died from malignant mesothelioma as a result of occupational exposure to asbestos. Dr. Abraham, who is board certified by the National Board of Medical Examiners and also board certified in the specialty of anatomic pathology, similarly rendered an opinion that Mr. DeMeyer’s asbestos exposure was *308 the cause of malignant mesothelioma and death. Neither expert, in reaching opinions on the issue of medical causation of the mesothelioma, attempted to distinguish between Mr. DeMeyer’s exposure to asbestos while employed at Garlock, Inc., and his later exposure as an automotive mechanic at the “Tire Rack.”
DaimlerChrysler Corporation, a defendant named ostensibly because of Mr. DeMeyer’s alleged exposure to asbestos while working on brakes at his own business, has now made a motion in limine to preclude, at trial, the opinions of both Dr. Moline and Dr. Abraham, as scientifically unreliable. In support of the application, this defendant has submitted the affidavit of Mary Jane Teta, who has received a Doctor of Public Health degree in chronic disease epidemiology and a Master’s degree in public health and biostatistics, and has over 25 years experience as an epidemiologist, specializing in occupational and environmental epidemiology studies and regulatory risk assessment. Dr. Teta has published a number of occupational and cancer epidemiology studies, including those relating to a causal relationship between asbestos and cancer.
In her affidavit, Dr. Teta states that the scientific and medical communities require epidemiologic studies in order to determine causation of a particular disease. Epidemiology is the study of the pattern of diseases in the human population, generally, by determining the relative risk of developing a condition as the result of exposure to a particular substance. Dr. Teta explains that this comparison of exposed and unexposed groups of individuals is usually accomplished by one of two study designs—cohort studies and case control studies. She acknowledges that epidemiological studies have demonstrated an elevated risk of developing mesothelioma as the result of asbestos exposure, in regard to certain occupations, but not for automobile mechanics working on friction products such as brakes.
Dr. Teta asserts that there have been 17 epidemiological studies involving garage mechanics, and that there is no evidence of an increased risk for developing mesothelioma as the result of brake work. She emphasizes that it is important to distinguish between occupational groups, and that work on friction products, such as brakes, predominately involves exposure to short chrysotile fibers of asbestos, as distinguished from amphibole fibers contained in other products. Although Dr. Teta acknowledges that case reports and case studies are useful for generating hypotheses about medical causation, such studies, *309 alone, are not an accepted method for determining medical causation without epidemiological studies. Based upon the absence of the latter, in regard to brake mechanics, Dr. Teta concludes that neither the opinion of Dr. Moline nor that of Dr. Abraham could have been based upon epidemiological studies, which would be a prerequisite to forming an opinion as to the cause of Mr. DeMeyer’s development of mesothelioma.
DaimlerChrysler, in support of its motion in limine, also relies upon a very recent decision issued by the Appellate Division, Second Department. In Parker v Mobil Oil Corp. (16 AD3d 648 [2d Dept 2005]), the plaintiff claimed that he had developed acute myelogenous leukemia as the result of a 17-year occupational exposure to gasoline containing benzene, and proposed to produce two expert witnesses to establish the causal relationship. However, the appellate court ruled that the testimony of these experts should be precluded because of the scientific unreliability of their methodology in arriving at their respective opinions. In reaching this determination, the Court relied upon “[a] scientifically-reliable methodology that is recommended by the World Health Organization and the National Academy of Sciences for drawing a sound conclusion as to the relationship between an individual’s disease and a specific factor suspected of causing that disease” (at 651 [emphasis added]). This methodology was described as a three-step process whereby there must be a determination of a claimant’s level of exposure to a toxin, proof of general causation and the level of exposure to which the toxin will produce a given illness, and establishment of specific causation by proving the probability that the toxin, in question, caused the claimant’s illness. Neither expert, in Parker, quantified the plaintiff’s specific exposure to benzene, and therefore, the Court reached its conclusion regarding the scientific unreliability of the methodology.
In essence, counsel for DaimlerChrysler contend that the opinions of Dr. Moline and Dr. Abraham should be precluded as unreliable because of not being based upon a generally accepted methodology, which requires consideration of general causation, under Parker and, as discussed by Dr. Teta, epidemiological studies do not support a causal relationship between friction products containing asbestos and mesothelioma. Counsel for the plaintiff candidly acknowledges that the opinions of Dr. Moline and Dr. Abraham were not based upon epidemiological studies, but rather upon a “constellation” of other evidence, including *310 historical case reports and studies, which is a generally accepted methodology and is not novel in the scientific community.
The test, in New York, for determining the reliability, and therefore, the admissibility, of expert testimony and opinion was first enunciated by the Court of Appeals for the District of Columbia in Frye v United States (293 F 1013 [1923]). The court ruled (at 1014) that before any expert is permitted to express an opinion or conclusion, “the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.” Thus, the proposed testimony, in this case, concerning the results of a “systolic blood pressure deception test” was properly precluded by the trial court because such test had not achieved “standing and scientific recognition among physiological and psychological authorities.” (Id.)
Under the Frye test, courts, in effect, perform a gatekeeper function by making an initial determination as to whether or not the basis of expert opinion has gained sufficient general acceptance in a particular field in order to be considered reliable, and to justify admission at trial. Many years following Frye, the United States Supreme Court decided Daubert v Merrell Dow Pharmaceuticals, Inc. (509 US 579 [1993]). The Court ruled that, in federal cases, the Frye general acceptance standard had been displaced by adoption of the Federal Rules of Evidence, which permitted an expert to testify if “scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.” (At 588.) Under this rule, federal trial courts, in effect, would occupy a gatekeeper role to determine if proposed expert testimony was both relevant and reliable. In regard to reliability, and the question of whether or not a particular theory or technique constituted scientific knowledge, a trial court could take into consideration certain nonexclusive factors, including whether it was tested, subjected to peer review and publication, the potential rate of error and also general acceptance.
During the 70-year period between the Court of Appeals decision in 1923 and the Supreme Court decision in 1993, courts, in New York, adhered to the general acceptance standard enunciated in Frye (see e.g., People v Taylor, 75 NY2d 277 [1990]; People v Middleton, 54 NY2d 42 [1981]). In the year following the Daubert decision, the New York Court of Appeals, in People v Wesley (83 NY2d 417 [1994]), which involved the admissibility of DNA evidence, reaffirmed that the Frye general acceptance *311 test continued to be the standard for determining reliability, and therefore, admissibility, of expert testimony in this state. As perhaps best articulated by Chief Judge Kaye, in a concurring opinion (at 439), it “is not for our Court to determine whether the method was or was not reliable . . ., but whether there was consensus in the scientific community as to its reliability.”
In recent years, courts have been inundated by applications to preclude expert testimony on the grounds that the principle or methodology underlying the expert’s opinion has not been generally accepted in the relevant scientific community. Many of these cases, as reflected in the decisions, involve issues of medical causation, such as birth defects (Lewin v County of Suffolk, 18 AD3d 621 [2d Dept 2005]; Del Maestro v Grecco, 16 AD3d 364 [2d Dept 2005]; Saulpaugh v Krafte, 5 AD3d 934 [3d Dept 2004]; Lara v New York City Health & Hosps. Corp., 305 AD2d 106 [1st Dept 2003]), nerve damage (Hooks v Court St. Med., P.C., 15 AD3d 544 [2d Dept 2005]), hyperabduction (Marsh v Smyth, 12 AD3d 307 [1st Dept 2004]), silicone toxicity (Pauling v Orentreich Med. Group, 14 AD3d 357 [1st Dept 2005]), heart attacks (Selig v Pfizer, Inc., 185 Misc 2d 600 [2000], ajfd 290 AD2d 319 [1st Dept 2002], lv denied 98 NY2d 603 [2002]), and, as in the pending case, personal injury resulting from exposure to toxic or chemical substances (Parker; Oppenheim v United Charities of N.Y., 266 AD2d 116 [1st Dept 1999]).
A court is only required to conduct an inquiry, concerning general acceptance, pursuant to Frye, in situations in which a party seeks to rely upon novel scientific, technical or other concepts involving expertise (People v Wernick, 89 NY2d 111 [1996]; People v Herington, 11 AD3d 931 [4th Dept 2004]; Gayle v Port Auth. of N.Y. & N.J., 6 AD3d 183 [1st Dept 2004]; People v Middlebrooks, 300 AD2d 1142 [4th Dept 2002]). Otherwise stated, if a principal theory or methodology forming the basis for an expert opinion has been generally accepted in the relevant scientific community, it would not be novel, and therefore, not require a hearing or other inquiry by the court. Of course, science and technology are ever changing, and although a particular concept may have previously been determined as not having been generally accepted, this may not necessarily preclude consideration of general acceptance after a passage of time (see e.g., People v Lee, 96 NY2d 157 [2001]).
A party challenging expert testimony should make a prima facie showing, in the first instance, that a particular concept, principle or methodology, underlying a proposed expert opinion, *312 has not been generally accepted, in the relevant scientific community, and therefore, represents a novel theory. Frequently, this is accomplished by submitting an expert affidavit containing supporting references to studies and professional publications. The issue presented in the pending case is whether or not the methodology employed by plaintiffs experts, in arriving at the opinion that exposure to asbestos was a competent producing cause of mesothelioma, may be considered reliable if not based upon epidemiological studies establishing a general causation between exposure to friction products by brake mechanics and the disease. This court does not interpret Parker as holding that the three-step process of the World Health Organization discussed therein is the only accepted methodology to determine causation. Nevertheless, Dr. Teta’s expert opinion, as set forth in her affidavit, together with reference to the epidemiological studies, especially when viewed in context of the discussion in Parker concerning general causation being a requirement in order to arrive at a reliable opinion, is sufficient, in this court’s opinion, to make a prima facie showing that the opinions of plaintiffs experts may not be based upon a generally accepted methodology.
Once a party has made a prima facie showing that a proposed expert opinion is not reliable, the burden shifts to the proponent of such evidence to establish general acceptance (Lara; Lewin; Parker; Del Maestro; Pauling; Selig). One question, which has seemingly not been addressed by the courts of this state to date, relates to the appropriate standard for this burden of proof. In this court’s view, there is no reason, in civil cases, that the usual standard of proof by the fair preponderance of the credible evidence should not be applied in the context of a Frye inquiry. Another question relates to the type of evidence, and the manner by which such evidence may be considered by a court, in reaching a decision whether or not the proponent has established that a particular concept or theory has been generally accepted by the relevant scientific community.
A useful analysis of the steps to be taken in order to make a determination of general acceptance may be found in the case of People v Fortin (184 Misc 2d 10 [2000]), in which the defendant in this criminal case had requested a Frye hearing in an effort to introduce evidence, through a psychiatrist, of parental alienation syndrome. In its decision, the trial court stated that, on occasion, reliability could be established by a particular concept being so notorious or obvious that judicial notice should be *313 taken of its general acceptance. Certainly, for example, the law of gravity would qualify under this category. Next, the court in Fortin indicated that reference should be made to legal writings and opinions, within New York, as well as other jurisdictions. Thus, for instance, although there are varying techniques, there is no question that, today, courts should consider DNA evidence as generally accepted, based upon Wesley and its progeny. However, in Fortin, because there was no consensus in the case law of this state or other states concerning the admissibility of proof of parental alienation syndrome, the court directed that there be a Frye evidentiary hearing.
Plaintiffs counsel has referred this court to three unreported decisions of trial courts in this state, involving asbestos-related personal injury actions. These courts permitted expert opinion on the issue of medical causation, notwithstanding claimed absence of epidemiological or other studies establishing general causation between. exposure to asbestos contained in friction products by brake mechanics. However, one of the decisions appears to have been made because of a belated motion to preclude the evidence on the part of the defendant. In another case, the trial judge simply did not wish to address the issue. In any event, in all three cases, none of the judges undertook a detailed or careful analysis of evidence of general acceptance, but rather, summarily denied the applications to preclude expert opinion being proffered by the plaintiff.
Counsel, for both the plaintiff and DaimlerChrysler, have submitted extensive lists of legal opinions on the question whether or not an opinion, concerning medical causation, must be supported by epidemiological studies. Unfortunately, most of these cases were decided in federal courts or other jurisdictions, which have adopted the Daubert standard for admissibility of expert testimony. The role of a judge as a gatekeeper is different in the states which have adhered to Frye, such as New York, and those jurisdictions which follow Daubert. Again, as stated by Chief Judge Kaye, in her concurring opinion in Wesley, trial courts, in this state, do not determine whether or not a method was reliable, but rather determine whether there is a consensus in the scientific community as to its reliability. In an address to the New York State Bar Association’s annual meeting in January 2003, the Chief Judge stated as follows: “The difference, in a nutshell, is that Frye looks to consensus within the scientific community as an indicator of reliability, while Daubert requires judges to evaluate both the validity of the expert reasoning and its application to the case.”
*314 One case, cited by plaintiffs counsel, from a state which has adopted Frye, is E.I. DuPont De Nemours & Co., Inc. v Castillo (748 So 2d 1108 [Fla Dist Ct App 2000]). The court reversed the judgment granted in the trial court and concluded that epidemiological studies were not a mandatory prerequisite to establish a toxic substances teratogenicity in human beings. The court further found that the methodology used by plaintiffs’ expert, “including the method of extrapolating from the achieved results” (at 1120), was not generally accepted in the relevant scientific community. This decision was subsequently reversed by the Florida Supreme Court (Castillo v E.I. DuPont De Nemours & Co., Inc., 854 So 2d 1264 [Fla Sup Ct 2003]). The reversal was based upon the fact that consideration of the method of extrapolation from achieved results constituted a Daubert-type analysis. Although perhaps dictum, the Supreme Court of Florida did state, in relevant part, as follows: “While epidemiology is considered generally accepted in the scientific community as a way of studying causal links between disease and chemicals, these types of studies are not necessarily required for a party to meet its burden of showing the causal link by a preponderance of the evidence” (at 1270). Nevertheless, the Supreme Court of Florida further determined that the plaintiffs’ experts had actually considered epidemiological studies in this case, although the parties disagreed about the conclusions reached in such studies.
Counsel for DaimlerChrysler has cited a letter decision from a trial court in Texas, a state which has also adopted Frye. Proposed evidence from Dr. Richard Lemen, an epidemiologist, was precluded because he admitted that there was not an epidemiological cohort study establishing a sufficient threshold standard for the relative risk of individuals who work around friction products and the development of an asbestos disease. However, this court agrees with counsel for the plaintiff that the decision was based upon very specific case law in the State of Texas, requiring proof of both specific and general causation.
Plaintiffs counsel contends that this court should reject the threshold standard, discussed in the aforementioned Texas court decision, and cites In re Joint E. & S. Dist. Asbestos Litig. (52 F3d 1124 [2d Cir 1995]) as being instructive on this point. In this case, the Federal District Court had granted a motion to set aside a jury verdict based upon the court’s analysis of the epidemiological studies. The reversal by the Second Circuit Court of Appeals was actually based upon the question of suffi *315 ciency of the evidence, rather than admissibility, but was critical of the trial court for transcending its gatekeeper role and usurping the jury’s function. Plaintiff’s counsel acknowledges that this decision applied Daubert, rather than Frye, but declares that this is the law in New York.
This court declines to apply Daubert to the facts of the pending case. Over the years, since Wesley, several trial courts in New York have decided to apply the Daubert standard rather than the general acceptance standard set forth in Frye (see e.g., Wahl v American Honda Motor Co., 181 Misc 2d 396 [1999]). Nevertheless, whenever directly confronted with the issue, appellate courts have consistently rejected the idea that Daubert should be the controlling standard in New York rather than Frye (see e.g., Pauling; McCarthy v Handel, 297 AD2d 444 [3d Dept 2002]).
Based upon a review of case law, both in the State of New York as well as other jurisdictions, this court is unable to discern a consensus regarding the general acceptance of the methodology utilized by plaintiffs experts to arrive at an opinion making a causal connection between exposure to asbestos friction products and mesothelioma. In Wesley, the Court of Appeals indicated that reference should be made not only to court opinions, but texts, laboratory standards or scholarly articles as well, in an effort to determine whether a particular concept has been generally accepted by the relevant scientific community, and absent such materials, the court may take testimony of expert witnesses (also see, Lewin; Parker; Pauling; Marsh). In opposition to the motion in limine to preclude the testimony of Dr. Moline and Dr. Abraham, plaintiff did not submit any expert witness affidavit, but rather, supplied the court with various written materials and documents.
One of the submissions consisted of a “Science Brief,” which had been utilized in an unrelated proceeding, in which Daimler-Chrysler and other automotive manufacturers sought to remove a number of asbestos-related personal injury cases to federal court (In re Federal-Mogul Global, Inc., 282 BR 301 [D Del 2002]). Of course, to the extent that plaintiffs counsel has adopted the legal argument contained in the “Science Brief,” it should not be accorded any greater weight than a legal memorandum. This “Science Brief’ does contain numerous references to exhibits, which have also been submitted to this court, some of which are illegible and many of which are irrelevant to the issue of general acceptance.
*316 In addition, plaintiff’s legal memorandum asserts that plaintiffs experts rely, in part, on case reports and studies and lists numerous published professional articles, which purport to substantiate that such reliance is generally accepted within the scientific community. Reference is also made to several articles appearing in the American Journal of Industrial Medicine, authored by Dr. Richard Lemen, the same witness who had been precluded from testifying in the aforementioned Texas case. Furthermore, reliance is placed upon a study, entitled the Australian Mesothelioma Registry, and a report of Dr. Douglas Henderson, a pathologist, who presented data from the Registry to a World Trade Organization proceeding.
In response to the materials submitted by plaintiff, Daimler-Chrysler submitted a supplemental affidavit from Dr. Teta. She reiterates, in this affidavit, that case reports may be useful for generating hypotheses, but epidemiological studies are “the best tool available to assess cause and effect relationships.” Thus, any opinions, such as the ones advanced by Dr. Moline and Dr. Abraham, based upon case reports and studies, without consideration of epidemiological studies, would not be generally accepted within the scientific community. According to Dr. Teta, one of Dr. Lemen’s articles relies upon a lifetime risk calculation based on a scientifically unacceptable method.
Dr. Teta further disagrees with the characterization, by plaintiffs counsel, that the Australian Mesothelioma Registry is, in some sense, an epidemiological study, and states that it is simply a collection of cases. She critiques Dr. Henderson’s presentation of data from the Registry, and notes that it was neither peer reviewed nor published in a professional journal. She indicates that a fundamental principle of epidemiology for rate of calculation is that the numerator must come from the same population as the denominator. However, the numerator and denominator of Dr. Henderson’s vehicle mesothelioma rate were based upon two different populations, with the numerator including more friction-related occupations than motor vehicle mechanics. Also, according to Dr. Teta, the rate, determined by Dr. Henderson, of one mesothelioma case per million population may be erroneous because the numbers were derived from North America and assumed no occupational or environmental asbestos exposure. She states that there is a likelihood of environmental exposure to asbestos among the population in Australia because of widespread use of crocidolite for construction and other applications in that country. Dr. Teta opines that *317 the correct comparison group, assuming no other occupational asbestos exposure, would have been the rate of mesothelioma in Australia, and cites an article appearing in the Medical Journal of Australia, indicating as many as eight or nine mesothelioma cases per one million Australian men.
Certainly, the documentary materials submitted by plaintiff in opposition to the motion to preclude are the type contemplated by the Court of Appeals in Wesley and used by trial courts since that time in an effort to glean general acceptance. Although not independently authenticated, counsel for Daimler-Chrysler has not challenged the foundation for the articles or studies. Indeed, Dr. Teta acknowledges the existence, for example, of the Australian Data Registry and Dr. Lemen’s articles, but disagrees with the conclusions sought to be drawn from such materials.
The problem, presented on the current record in the case, is the fact that plaintiff has not submitted a sworn affidavit from an expert witness. Faced with the uncontroverted sworn affidavits from Dr. Teta, this court has no means by which to make a finding of general acceptance, based simply upon review of the voluminous documents, which have been submitted by plaintiff. However, because there are questions of fact, which cannot be resolved by the motion papers, the court directs that an evidentiary hearing be held before trial. At this Frye hearing, plaintiff will bear the burden of proof, by a fair preponderance of the credible evidence, to establish general acceptance of the methodologies employed by Dr. Moline and Dr. Abraham, in reaching their respective opinions regarding causation. As with any evidentiary hearing, this should be proved by producing sworn witnesses, who will be subject to cross-examination, and introducing documentary evidence after establishing a sufficient foundation. Daimler Chrysler ’ s companion motion for summary judgment will be held in abeyance pending a decision on the motion in limine to preclude, following the hearing.

 Absent scheduling orders, expert disclosure is usually made pursuant to CPLR 3101 (d), which frequently results in expert disclosure within a short period before trial.