OPINION OF THE COURT
Helen E. Freedman, J.
In these actions, defendant DaimlerChrysler Corporation moves in limine for (i) an order precluding plaintiffs from offering evidence that exposure to automotive friction products causes asbestos disease in motor vehicle mechanics; and (ii) an order pursuant to CPLR 3212 dismissing plaintiffs’ complaints and all cross claims against DaimlerChrysler Corporation in their entirety. Based on the foregoing, both motions are denied. Alternatively, defendant DaimlerChrysler seeks a Frye (United States v Frye, 293 F 1013 [1923]) hearing for the purpose of demonstrating that the chrysotile asbestos fibers in motor vehicle brakes are not associated with an increase in the incidents of asbestos related diseases beyond the incidence of such diseases in the general population, that is people who have no known occupational exposure to asbestos. That application is also denied without prejudice to making such an application in any specific case before or at trial.
Both decedents in this case, Herman Berger and Arnold Nygaard, died from mesothelioma, a signature asbestos related disease, after extensive exposure in their respective businesses to brake and clutch dust from Chrysler products. However, it is this court’s understanding that this motion is designed to apply to all asbestos cases in the New York City Asbestos Litig. involving DaimlerChrysler as a friction (brake and clutch) defendant. Mr. Berger owned garages from 1945 to 1949 and from 1951 to 1980. He had been a welder in the Brooklyn Navy Yard from 1941 to 1944 where he was also exposed to asbestos. Mr. Nygaard was exposed to Chrysler product dust in his own trucking business from 1950 to 1965. He may have had shipyard exposure as well.
DaimlerChrysler, in support of its applications, sets forth various epidemiological studies which purportedly show that *337 motor vehicle workers are not at any greater risk for contracting asbestos related diseases than those in an unexposed or general population. Specifically, Daimler Chrysler supports its contentions with two affidavits by Mary Jane Teta, Ph.D. Dr. Teta has a doctorate in public health, specializing in chronic disease epidemiology, and a Master’s in public health in biostatistics, both from Yale University. She has been an occupational epidemiologist for over 25 years. Dr. Teta explains the purpose of epidemiological studies and then describes two types of studies, one known as a cohort study and another as a case control study, the latter of which she opines is recognized as the most appropriate approach to the study of causes of “rare” diseases such as mesothelioma. She then states that the results of six of eight case control epidemiological studies demonstrate that there is no increased risk for mesothelioma among those exposed to brake work dust (friction dust) when compared with the risk to the general population. She also opines that there is considerable difference between exposures that automobile mechanics undergo and exposures undergone by others who are occupationally exposed to asbestos. She avers that the chrysotile fibers in automobile brakes or friction products are shorter than most chrysotile fibers (less than five microns in length), are embedded in resin, and that after heating through friction use become forsterite which is no longer asbestos and not capable of causing asbestos related diseases. She also states that the brake fibers (all chrysotile) are hundreds of times less potent than amphibole (crocidolite, tremolite, amosite) fibers, a fact that no one disputes. Dr. Teta has testified before this court and other judges in both this and other courts in this jurisdiction in individual cases involving friction related asbestos exposure, and while her testimony has been admitted, no court has found it to be determinative. However, Justice Raymond Cornelius found Dr. Teta’s submissions sufficiently persuasive to order a Frye hearing to determine the admissibility of evidence linking working with friction products, specifically brake repair work, to development of mesothelioma. (See Matter of Seventh Jud. Dist. Asbestos Litig., 9 Misc 3d 306 [Sup Ct, Wayne County 2005].) That hearing, in which plaintiff was told it would have the burden of proof to demonstrate general acceptance of its methodology, was never held because plaintiff moved to dismiss the claims against DaimlerChrysler.
Dr. Teta also responds to plaintiffs’ arguments contending that plaintiffs’ experts do not follow generally accepted *338 methodology which requires following the accepted hierarchy of epidemiological evidence. She states that Dr. Panitz and Dr. Le-men, two of plaintiffs’ experts, rely on a weight-of-evidence approach, akin to the case study approach, which is at best on the “lowest rung” of scientific evidence and compares unfavorably with epidemiological evidence. Dr. Teta opines that plaintiffs’ experts base their opinions on (1) case reports and case series, (2) increased risks of mesothelioma in asbestos exposed workers in other occupations, and (3) observations of chrysotile in human lungs and observations of asbestos exposure in garages that install and repair brakes. These would constitute a reasonable basis for forming a hypothesis related to mesothelioma and brake work, if the studies had not already been conducted and the hypothesis rejected. Biological plausibility cannot be substituted for epidemiological evaluation according to Dr. Teta. The epidemiological evidence related to chrysotile exposure in other occupations that plaintiffs’ experts rely upon is not relevant to brake work mechanics or garage workers. The fibers in brakes are shorter, resin bound, and subject to high temperatures, all of which render them less toxic than other chrysotile fibers. Dr. Teta also rejects plaintiffs’ expert Dr. Egilman’s criticism of Goodman’s meta analysis as selective and industry funded on the ground that neither criticism is warranted and that Dr. Egilman has developed no alternative that would show anything different.
Movants also furnish an affidavit by Suresh H. Moolgavkar, a physician with a Ph.D. in mathematics and postdoctoral training in epidemiology and biostatistics. He is currently a member of the Fred Hutchinson Cancer Research Center in Seattle and a professor of epidemiology, adjunct professor of biostatistics, and adjunct professor of applied mathematics at the University of Washington at Seattle. Dr. Moolgavkar opines that the molecular steps in the pathogenesis of mesothelioma are unknown, and which of these steps may be influenced by the presence of asbestos mineral fibers is unclear. The diversity of chemical and physical properties of the mineral fibers means that certain types of asbestos fibers, those in molded brakes or friction products, differ from chrysotile fibers found in other sources. He invokes experimental research and studies performed by others including R. Valentine et al. demonstrating that heating chrysotile at a range of 300 to 400 degrees centigrade substantially reduced cytotoxicity to human fibroblast cells. He asserts that it is well known that the braking process involves *339 temperatures that eventually transform a majority of chrysotile fibers into forsterite, an inert mixture of silica and magnesia. According to research by Arthur M. Danger et al. published in 2002, that transformation occurs at temperatures around 650 degrees centigrade. Danger’s research suggests that forsterite does not have the same biological activity (disease causing capability) as other fibers.
Finally, Daimler Chrysler submits the affidavit of Morton Corn, certified safety professional and professor emeritus at Johns Hopkins University School of Public Health, Department of Environmental Health Sciences, Division of Environmental Engineering, who has a Ph.D. in industrial hygiene and sanitary engineering from Harvard University and a Bachelor’s degree in chemical engineering from Cooper Union. From 1982 to 1997 he was director of the National Institute for Occupational Safety and Health (NIOSH) Educational Resource Center in Occupational Safety and Health at Johns Hopkins University. In 1975, he was appointed Assistant Secretary of Dabor and head of Occupational Safety and Health Administration (OSHA). He opines that the amount of asbestos in the air from brake mechanic work at any given time based on time weighted average studies is insufficient to warrant a conclusion that they cause disease. He speaks in terms of dose exposure, peak exposure levels, and time weighted measurements. Among DaimlerChrysler’s extensive compendium of articles and studies appended as exhibits is an article by Dr. Victor Roggli, a noted pathologist and expert on asbestos related disease, that criticizes Dr. Demen’s analysis on the ground that it fails to reference Danger’s studies or take into account various other epidemiological studies. The analysis also ignores Dr. Roggli’s own studies and conclusions relating to the asbestos fiber burden in the lungs of brake mechanic workers.
In response, plaintiffs argue that a Frye hearing is inappropriate because the relationship of asbestos to mesothelioma is well established and there is no novel science involved that would warrant a hearing. Plaintiffs also submit the above-criticized studies and papers by Dr. Richard Demen, former deputy director and acting director of NIOSH as well as Assistant Surgeon General, United States Public Health Service. He has been an epidemiologist for 30 years and is a Ph.D. In his peer reviewed articles, both entitled Asbestos in Brakes: Exposure and Risk of Disease, and both published in editions of the American Journal of Industrial Medicine, Dr. Demen deals specifically with argu *340 ments advanced by motor vehicle manufacturers that claim that epidemiological evidence does not demonstrate increased risk of contracting mesothelioma. Although he acknowledges that many of the chrysotile fibers in brake linings are shorter and may be less toxic than longer ones, he concludes that brake workers, particularly those who manipulate and cut brake linings, which are 40% to 50% chrysotile asbestos, are clearly at increased risk of contracting asbestos related diseases. (Richard A. Lemen, Asbestos in Brakes: Exposure and Risk of Disease, 45 Am J Ind Med 229-237 [2004].) He bases this in part on a study of peer reviewed literature that reveals at least 165 cases of mesothelioma in end-product users of friction products and government studies that have shown even more cases. He concludes that ambient air could not have caused this number of cases in the population involved. The factors that go into his conclusion are:
• encapsulated asbestos containing brakes do release asbestos fibers when the brakes are both used and manipulated and at concentrations capable of causing disease;
• short asbestos fibers (less than five microns in length), often found in brakes and brake residue, have been shown to pose a risk of disease;
• the application of control methodologies has resulted in reduced exposure to asbestos, but has not entirely eliminated exposures;
• additional asbestos exposures beyond those encountered directly from work with brakes, occur from faulty work practices and clean-up methods which are not appropriate;
• OSHA has stated that its current standard for asbestos (0.1 f/cc) will not eliminate the risk of asbestos induced cancers, and;
• the International Program for Chemical Safety has concluded that no threshold has been identified for carcinogenic risks for chrysotile asbestos, the principal fiber type used in asbestos-containing brakes.
Additionally, plaintiffs submit an extensive if not exhaustive affidavit by clinical associate professor of community medicine David Egilman, a board certified physician in internal medicine and preventive occupational medicine with three years of *341 epidemiological training at NIH and a Harvard Master’s degree in public health. He opines, as does an article he authored in 2005 published in the International Journal of Occupational and Environmental Health, that the epidemiological studies sponsored by automobile manufacturers and brake manufacturers misuse and manipulate data and are designed to reach a conclusion that defies logic. He questions the entire methodology employed in those studies, including those relied upon by Dr. Teta, which plaintiffs claim would almost have one believe that brake work prevents mesothelioma! He also concludes that an examination of the totality of the relevant evidence, utilizing standard cause and effect criteria, clearly demonstrates that dust from asbestos containing friction materials is capable of causing mesothelioma.
Plaintiffs append a NIOSH generated report for Chrysler Chemical Division in Trenton, Michigan, Health Hazard Evaluation Report (HETA 87-126-2019) written in 1990, which states, among other things, that “although the precise risk associated with particular levels of exposure to asbestos remains controversial, the fact that exposure to asbestos causes severe and often fatal disease is widely recognized by the scientific community.” The report goes on to say that no safe level of asbestos exposure has been established and that increased asbestos related disease has been detected in all occupationally exposed workers. Recommendations were made that included provision of respirators and establishment of a decontamination area as well as improved monitoring of air quality. The plant was closed in part because investigators concluded based on air samples that a health hazard existed.
Another NIOSH report to Congress in September 1995 stated that “[fjatal lung diseases have occurred among family members of workers engaged in the manufacture of many products containing asbestos including thermal insulation materials . . . brake shoes and other friction products for automobiles.” The report specifically notes that mesothelioma can result from low levels of exposure and for only a short period of time. In addition, plaintiffs furnish a copy of the Gold Book, issued by the United States Environmental Protection Agency entitled Guidance for Prevention Asbestos Disease Among Auto Mechanics, the title of which demonstrates that auto mechanics are at increased risk from respirable asbestos fibers. The book goes on to assert that millions of asbestos fibers can be released during brake and clutch servicing and that asbestos fibers can linger *342 on in garages after servicing has been completed. There are many other references to dangers of asbestos exposure as well as an assertion that mesothelioma has occurred among brake mechanics, their wives and their children.
Plaintiffs also attach testimony and affidavits from other physicians who specialize in occupational medicine and epidemiology and have examined and treated numerous individuals with asbestos related diseases. Included is testimony from Dr. Steven Markowitz, an occupational medicine specialist; Dr. Jerrold Abraham, a pathologist and director of environmental and occupational pathology at SUNY Upstate Medical University; Dr. Douglas Pohl, a clinical pathologist and cytopathologist; and Dr. Elaine Panitz, an occupational disease specialist with a Master’s in public health in epidemiology. Each opines that it is not necessary to have an epidemiological study for each occupational group and it is well known that a small number of chrysotile fibers, even short ones, increases the risk of asbestos related cancers. These physicians, all of whom have direct experience with mesothelioma victims, reject the notion that case reports do not provide useful data in establishing causality, particularly in individual cases with known exposures.
Contentions
Defendants argue that the Appellate Division, Second Department, decision Parker v Mobil Oil Corp. (16 AD3d 648 [2d Dept 2005]) supports their contention that their experts’ opinions must derive from scientific methodology which in turn would preclude plaintiffs’ experts from offering opinion testimony. In that case, the Second Department found that plaintiffs expert, who opined that the benzene that plaintiff had been exposed to caused his acute myelogenous leukemia, had not demonstrated that he followed the three step process recommended by the World Health Organization and the National Academy of Sciences, which he asserted that he had followed, or any other scientifically sound methodology for ascertaining the benzene levels that plaintiff had been exposed to could cause or caused his leukemia. The expert then based his opinion testimony on the fact that if large concentrations of benzene could enhance the risk of disease, Parker’s exposure, which the expert was unable to quantify, must have caused his disease.
Plaintiffs counter that reliance on Parker is misplaced. First, unlike leukemia which can have many causes, and is often iatrogenic, mesothelioma is a signature disease primarily if not exclusively caused by asbestos exposure. Second, no new scien *343 tifie claim is being made here. It has long been established that mesothelioma caused by asbestos exposure is frequently not dose related and relatively small numbers of fibers that are inhaled may remain in the lungs for long periods and cause mesothelioma. Although the primary epidemiological studies that have established this come from exposure to products other than friction products, there are some epidemiology studies, such as the one involving an Australian registry of victims that have related development of mesothelioma to exposure to friction and automotive products.
Discussion
This court is not the first one to have been asked to exercise its gatekeeping function by conducting a Frye or Daubert (Daubert v Merrell Dow Pharms., Inc., 509 US 579 [1993]) hearing to preclude plaintiffs from offering scientific or medical evidence showing that the exposure to chrysotile asbestos that automobile mechanics sustain when working on brakes or clutches can cause mesothelioma or other signature asbestos diseases. While Honorable Raymond Cornelius found defendant’s motion in limine sufficiently persuasive to warrant a Frye hearing, other justices in this state have not. Honorable James Kane denied Chrysler’s application for a Frye hearing in Breidenstein v Allied Signal Co. (Sup Ct, Erie County 2004, Index No. 11581/04), holding that New York law does not require an expert to rely on epidemiological evidence, that case reports are appropriate to consider in assessing cause-effect relationships, that Chrysler’s reliance on Parker was misplaced, and that plaintiffs expert’s opinions were based on principles which have gained scientific acceptance and were not novel. He had previously denied an in limine preclusion motion made by Georgia Pacific in relation to its joint compound product based on a chrysotile defense (Kazmar). Honorable Dana Winslow in Lechner v AC&S (Sup Ct, Nassau County 2002, Index No. 2411/02) summarily rejected an application for a Frye hearing in a friction case stating that case reports were admissible for the jury’s consideration. Justices have been asked to have Frye hearings in nonfriction cases where defendants have claimed that their products did not emit sufficient fibers to cause asbestos disease or the fibers were encapsulated and, therefore, not friable or respirable. Honorable Louis York twice declined to hold a Frye hearing in a friction case (Brown v AC&S, Sup Ct, NY County 2000, Index No. 120595/00) stating that Frye has been interpreted to say that as long as there is a substantial basis in the relevant scientific *344 community for an opinion, whether it represents the majority opinion or not, the evidence and opinion can be presented to the jury. Honorable Karen Smith reached a similar conclusion in Mammes v AC&S (Sup Ct, NY County 2004, Index No. 24111) also a friction case. Honorable James McCarthy in Olin v A.P. Green Indus. (Sup Ct, Onondaga County 2001, Index No. 5992/01) rejected an application for a Frye hearing by Kaiser Gypsum whose chrysotile product was implicated in causing mesothelioma.
Although it has not specifically ruled in a friction case, the First Department in New York has stated it is not novel science for a party to introduce expert testimony showing that a plaintiff who was exposed to visible dust containing asbestos fibers contracted mesothelioma as a result of that exposure. (Lustenring v AC&S, Inc., 13 AD3d 69 [1st Dept 2004].) More recently, in 2005, the First Department held in Matter of New York City Asbestos Litig. (24 AD3d 375, 375 [1st Dept 2005]) that a defendant’s
“claim that a Frye hearing should have been held is without merit. The link between asbestos and disease is well documented, and the parties merely differed as to whether the asbestos contained in this particular product could be released in respirable form so as to cause disease. Since the parties argued over causation, no novel scientific technique or application of science was at issue, and a Frye hearing was not warranted.”
Courts in other jurisdictions have also ruled in friction cases. Judge Robert Colombo, Jr., the asbestos judge in Wayne County, Michigan (my counterpart), summarily denied defendants’ motions seeking to preclude evidence linking brake exposure to mesothelioma in Chapin v A. & L Parts, Inc. (Index No. 324775 NP). After being directed by the Michigan appellate court to hold a Daubert hearing Judge Colombo credited Dr. Lemen’s testimony finding that the evidence plaintiff was presenting was neither novel in methodology or science and was therefore admissible. Judge Mark Davidson, the Texas Multidistrict Litigation (MDL) Judge for asbestos cases, in In re Asbestos Litig., conducted a three-day hearing in response to DaimlerChrysler’s in limine motion joined in by Ford Motor Company, seeking to preclude all plaintiffs’ witnesses claiming that mesothelioma can be caused by exposure to brake linings in automobiles and trucks. He relied in part on a Texas case, Merrell Dow Pharms., *345 Inc. v Havner (953 SW 2d 706 [Tex 1997]) which established the requirements of proof of general and specific causation and that epidemiological evidence demonstrating twice the likelihood of contracting the disease was essential to establish general causation. Richard Lemen, Eugene Mark and Ronald Dodson testified at the MDL hearing. The court ultimately concluded that a case-by-case review of the occupational history of each plaintiff together with a pathological examination and review was necessary to determine whether to admit evidence of causation. He rejected Dr. Mark as a witness but otherwise denied defendants’ motion.
Judge Joseph R. Slights, III, of the Superior Court of Delaware in and for New Castle County, also held a Daubert hearing in response to DaimlerChrysler Corporation’s motion in limine to preclude evidence linking exposure to automotive friction products and asbestos disease. In a 74-page decision issued on May 9, 2006, In re Asbestos Litig. (900 A2d 120), after a multiday evidentiary hearing and extensive argument, he denied the motion in all respects. Dr. Dodson testified in this hearing also. Judge Slights credited his testimony, which was based in part on references to other studies including that of Danger and Rohl, finding it sufficiently persuasive to satisfy the evidentiary requirements of Daubert. Judge Slights specifically found that epidemiological evidence is not required as a matter of law, and concluded that other evidence established that friction products in a garage setting would release sufficient chrysotile fibers to create a dose response for asbestosis, lung cancer and mesothelioma. The fact that the specific biological mechanism as to how the toxic substance causes disease is not known does not preclude evidence of causation. Judge Slights found that plaintiffs had satisfied their burden with respect to both general and specific causation.
Both parties have submitted decisions of Common Pleas Court judges in Pennsylvania on in limine motions to preclude evidence in friction cases. Judge Robert Colville has apparently invited a Frye hearing in the case of Girty-Risk v Pneumo Abex Corp. (Pa Ct Com Pl, Allegheny County, G.D. No. 04-2043) while Judge Lawrence E Clark denied a motion by the big three (DaimlerChrysler, Ford Motor Company and General Motors Corporation) in Kulig v Abb. Inc. (Pa Ct Com Pl, Dauphin County 2003, No. 030519) as did Judges Della Vechia, John F. Spataro and Terrence O’Brien in Moeller v Borg-Warner Corp. (Pa Ct Com Pl, Allegheny County, Sept. 2005, G.D. *346 No. 16889), McIver v Pneumo-Abex Corp. (Pa Ct Com Pl, Crawford County, Oct. 2005, A.D. 2004-176), and Moore v Allied-Signal, Inc. (Pa Ct Com Pl, Allegheny County, Dec. 2005, G.D. No. 05-3941), respectively.
Conclusion
The issue is whether the court should exercise its gatekeeping function to hold a hearing on DaimlerChrysler’s in limine motion to preclude evidence in an asbestos personal injury case where the alleged harmful exposure came from asbestos contained in friction products. For the reasons stated by the majority of judges who have dealt with this specific issue and based on what appears to be clear direction from the First Department in Brown v AC&S (supra), Lustenring v AC&S (supra), and Matter of New York City Asbestos Litig. (supra), a Frye hearing to establish causation or lack thereof for all cases in New York City Asbestos Litig. or for these particular plaintiffs is not appropriate. See also Gayle v Port Auth. of N.Y. & N.J. (6 AD3d 183 [1st Dept 2004]) rejecting defendant’s posttrial request for a Frye hearing where novel science was not involved. As the First Department has stated, it is not novel science that exposure to asbestos causes mesothelioma.
Moreover, defendants have not shown that it is not generally accepted by a significant number of well-credentialed scientists and physicians that exposure to friction products can be a cause or contributing factor to the development of mesothelioma or other signature asbestos related diseases. While eminent scientists, some of whom have been hired by or done work for friction defendants, have reviewed or conducted epidemiological studies that demonstrate that garage workers in general or garage mechanics in particular are not at “increased risk,” other epidemiological evidence shows that brake and clutch mechanics may well be at increased risk. The Australian registry of mesothelioma victims shows an apparent increased risk of friction workers as do other peer reviewed articles describing relevant studies. Chrysotile asbestos fibers have been found embedded in the pleural tissue of brake mechanics who died of mesothelioma. Scientists and physicians use various means to establish causation in particular situations, not the least of which are toxicological and pathological studies and documented case studies. While epidemiology may be the “gold” standard, it cannot be the only standard in an area where causation is both particularistic and well established. Federal courts have also held that epidemiological evidence is not necessary to establish *347 causation. (See In re Phenylpropanolamine (PPA) Prods. Liab. Litig., 289 F Supp 2d 1230 [WD Wash 2003]; Christophersen v Allied-Signal Corp., 902 F2d 362 [5th Cir 1990].)
This court also agrees with Judge Kane who stated, “I agree with Judge Colombo’s observation that: ‘It is not really important to have an epidemiological study to determine whether the risk of cancer is increased by asbestos exposure in every occupation.’ ” Where, as here, extensive epidemiological evidence has been adduced that chrysotile fibers cause mesothelioma and other asbestos diseases, and where it is undisputed that defendant’s products were made up of as much as 50% chrysotile, even though they were embedded in resin and most but not all were shorter than five microns, and where the plaintiffs developed mesothelioma, there is sufficient empiric evidence to allow the jury to consider causation.
Defendants Ford Motor Company and General Motors Corporation join DaimlerChrysler in this application and, for the reasons stated above, their motions are also denied.
This decision denying defendants’ motions to preclude evidence of causation relating to their products or to conduct a Frye hearing, of course, does not preclude defendants from offering the evidence they proffer here to the jury for its consideration in any individual case.